[1 NE3d 298, 978 NYS2d 97]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK-LIN HUGHES, Appellant.

Argued October 9, 2013; decided November 19, 2013

**POINTS OF COUNSEL**

*Michael A. Fiechter*, Bellmore, for appellant. I. Strict scrutiny is the appropriate standard to be applied when determining the

constitutionality of statutes infringing upon the fundamental individual rights guaranteed by the Second Amendment to the United States Constitution and New York Civil Rights Law § 4. (*Carey v Brown*, 447 US 455; *Romer v Evans*, 517 US 620; *Police Dept. of Chicago v Mosley*, 408 US 92; *Regan v Taxation With Representation of Wash.*, 461 US 540; *Massachusetts Bd. of Retirement v Murgia*, 427 US 307; *Plyler v Doe*, 457 US 202; *Harper v Virginia Bd. of Elections*, 383 US 663; *People v Perkins*, 62 AD3d 1160; *District of Columbia v Heller*, 554 US 570; *Press v State Univ. of N.Y. at Stony Brook*, 388 F Supp 2d 127.) II. Penal Law §§ 265.03 (3) and 265.02 (1) are an unconstitutional restriction of rights guaranteed by the Second Amendment to the United States Constitution and New York Civil Rights Law § 4. (*United States v Chester*, 628 F3d 673; *United States v White*, 593 F3d 1199; *In re United States*, 578 F3d 1195; *Matter of City Servs., Inc. v Neiman*, 77 AD3d 505; *Matter of Al Turi Landfill v New York State Dept. of Envtl. Conservation*, 289 AD2d 231.)

*Kathleen M. Rice, District Attorney*, Mineola (*Yael V. Levy* and *Tammy J. Smiley* of counsel), for respondent. I. This Court lacks jurisdiction over defendant's constitutional challenge to New York's gun possession laws because it was raised for the first time in a motion to set aside the verdict and, even then, defendant challenged only one of the two laws he now identifies as unconstitutional. (*People v Hines*, 97 NY2d 56; *People v Padro*, 75 NY2d 820; *People v Davidson*, 98 NY2d 738; *People v Iannelli*, 69 NY2d 684; *People v Middleton*, 54 NY2d 42; *People v Gibian*, 76 AD3d 583; *People v Fogarty*, 12 AD3d 854; *People v Bautista*, 25 AD3d 341; *People v Brown*, 265 AD2d 893; *People v Knapp*, 79 AD3d 1805.) II. New York legitimately penalizes unlicensed firearm possession by convicted criminals without running afoul of the Second Amendment. (*District of Columbia v Heller*, 554 US 570; *United States v Barton*, 633 F3d 168; *United States v Rozier*, 598 F3d 768; *United States v Vongxay*, 594 F3d 1111; *United States v Scroggins*, 599 F3d 433; *United States v Skoien*, 614 F3d 638; *United States v McCane*, 573 F3d 1037; *Carey v Musladin*, 549 US 70; *Sheet Metal Workers v EEOC*, 478 US 421; *United States v Chester*, 628 F3d 673.)

*Eric T. Schneiderman, Attorney General*, New York City (*Nikki Kowalski, Simon Heller, Barbara D. Underwood* and *Richard Dearing* of counsel), for New York State Attorney General, intervenor-respondent. The convictions here do not violate the Second Amendment. (*District of Columbia v Heller*, 554 US 570;

*United States v Decastro*, 682 F3d 160; *United States v Torres-Rosario*, 658 F3d 110; *United States v Barton*, 633 F3d 168; *United States v Moore*, 666 F3d 313; *United States v Anderson*, 559 F3d 348; *United States v Williams*, 616 F3d 685; *United States v Joos*, 638 F3d 581; *United States v Vongxay*, 594 F3d 1111.)

## OPINION OF THE COURT

SMITH, J.

Defendant was convicted of a class C felony and sentenced to 3½ years in prison for possessing a loaded weapon in his home. He does not dispute that his conduct is punishable as a crime, but says that punishing it as a class C felony violates his Second Amendment right to keep and bear arms. We hold that this right has not been violated.

I

Defendant's ex-girlfriend Erica lived in an apartment in Hempstead, Long Island. Though their romantic relationship had ended, defendant visited her and stayed at her apartment frequently—so frequently that the trial court, which tried the case without a jury, found that the People had failed to prove that Erica's apartment was not defendant's home. On the day before the event that is now at issue, defendant was at Erica's apartment, heard shooting outside, and decided to bring a gun with him for protection the following day.

On that day, defendant arrived at Erica's apartment with a loaded handgun, for which he had no permit. He chatted with members of Erica's family, then stepped outside—apparently still, under the findings of the trial court, in the curtilage of his home. There he encountered two men, one of whom was Quentin Roseborough. After an argument, defendant drew the gun and shot Roseborough dead.

Defendant was indicted on one count of murder and three counts of criminal possession of a weapon. He raised a justification defense to the murder charge, relying on his own written statement to the police and testimony before the grand jury, in which he said that he shot Roseborough—known to him by the nickname "Maniac Guns"—after Roseborough pulled a gun on him. Eyewitnesses corroborated significant details in defendant's account, and the trial judge believed it. The court acquitted defendant of murder, of manslaughter as a lesser included offense, and of possession of a weapon with intent to use it

unlawfully. The court convicted him, however, of criminal possession of a weapon in the second degree (possession of a loaded firearm), a class C felony, and of criminal possession of a weapon in the third degree (possession of a firearm by one previously convicted of a crime), a class D felony.

Defendant had a previous conviction for a misdemeanor, resisting arrest, which was essential to both of his weapon convictions. As we explain in more detail below, the prior misdemeanor barred defendant from defeating the second degree weapon possession charge on the ground that the possession took place in his home (*see* Penal Law § 265.03 [3]); and previous conviction of a crime is an element of third degree weapon possession (*see* Penal Law § 265.02 [1]). If he had not previously been convicted of any crime, defendant would have been found guilty in this case only of a class A misdemeanor, criminal possession of a weapon in the fourth degree (possession of a firearm) (Penal Law § 265.01 [1]).

Defendant moved in the trial court, pursuant to CPL 330.30, to set aside his conviction for second degree weapon possession. The Court denied the motion and sentenced defendant to 3½ years of imprisonment on the second degree count and one year on the third degree count, to run concurrently. The Appellate Division affirmed the judgment of conviction and sentence as to both counts, rejecting defendant's argument that his Second Amendment rights had been violated (*People v Hughes*, 83 AD3d 960 [2d Dept 2011]). A Judge of this Court granted leave to appeal (19 NY3d 961 [2012]), and we now affirm.

## II

Defendant's only significant argument on appeal is that his convictions of a class C and a class D felony infringed his Second Amendment right to keep and bear arms. The People assert that we may not reach this argument because it is not preserved. As to defendant's conviction for third degree weapon possession (the class D felony), the People are right. Defendant never challenged the third degree count on constitutional grounds at Supreme Court. But as to defendant's second degree (class C felony) conviction, we conclude that, as the Appellate Division held, the preservation was adequate under the circumstances of this case.

Defendant did not move before or during trial to dismiss the second degree weapon possession charge on constitutional grounds. He did, however, make such a motion after trial, but

before sentence, pursuant to CPL 330.30. He argued—essentially as he argues here—that to convert a weapon possession crime to a class C felony on the basis of a prior misdemeanor conviction is an infringement of his right to keep and bear arms.

The People argued in Supreme Court this issue was raised too late. They had a point. CPL 255.10 (1) (a) defines a motion to dismiss or reduce an indictment as a "pretrial motion," and CPL 255.20 (1) requires such motions to be made "within forty-five days after arraignment and before commencement of trial." The trial court might well have been within its discretion if it had refused to consider defendant's CPL 330.30 motion. However, the People, though complaining of the motion's tardiness, did not suggest that they had been prejudiced by the delay. They now argue that, had defendant's argument been raised earlier, they might have mooted it by proving that defendant had a prior *felony* conviction, but they never said this to the trial court.

■ The trial court did not accept the People's timeliness objection, and decided defendant's motion on the merits. We reject the idea that the court was powerless to do so. Defendant could have asserted his constitutional claim in a motion to dismiss the indictment pursuant to CPL 210.20, a motion that must normally be made before trial, but one which "the court, in the interest of justice, and for good cause shown, may, in its discretion, at any time before sentence, entertain and dispose of . . . on the merits" (CPL 255.20 [3]). The court was not deprived of its discretion because defendant may have put the wrong section number—CPL 330.30 rather than 210.20—on his motion papers, and it was not an abuse of discretion for the court to entertain the belated motion. Having been raised by defendant and decided by the trial court, the constitutional issue as to the second degree weapon possession conviction was preserved for appeal (*see* CPL 470.05 [2]).

### III

Under Penal Law § 265.01 (1), a person who "possesses any firearm" is guilty of criminal possession of a weapon in the fourth degree, a misdemeanor. But a person who possesses "any loaded firearm" is guilty of criminal possession in the second degree, a class C felony (Penal Law § 265.03 [3]), unless "such possession takes place in such person's home or place of business" (*id.*). The home or business exception is inapplicable,

however, if the person possessing the weapon "has been previously convicted of any crime" (Penal Law § 265.02 [1] [incorporated by reference in Penal Law § 265.03 (3)]; *see People v Jones*, 22 NY3d 53 [2013] [decided today]).

This last provision—the prior-crime exception to the home or place of business exception—resulted in defendant's conviction for second degree weapon possession. Although the trial court found that defendant possessed the gun in his home, that does not help him under the statute, because he was previously convicted of a misdemeanor, resisting arrest. Defendant's argument is, in essence, that to elevate a weapon possession charge to a class C felony on the basis of a prior misdemeanor conviction impermissibly burdens his right to keep and bear arms under the Second Amendment ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed"), which was interpreted in *District of Columbia v Heller* (554 US 570 [2008]) and *McDonald v Chicago* (561 US 742 [2010]) to create an individual right to bear arms that the states are bound to respect.

To put defendant's argument in context, it is important to understand that New York's criminal weapon possession laws prohibit only *unlicensed* possession of handguns. A person who has a valid, applicable license for his or her handgun commits no crime (Penal Law § 265.20 [a] [3]). Nor is a license to possess a handgun in one's home difficult to come by. Subject to some qualifications, a "householder" is entitled to a license to "have and possess in his dwelling" a pistol or revolver (Penal Law § 400.00 [2] [a]); the only qualification relevant here is that the householder must not have been "convicted anywhere of a felony or a serious offense" (Penal Law § 400.00 [1] [c]). Resisting arrest is not a "serious offense" as defined in the Penal Law (Penal Law § 265.00 [17]). Thus, if the resisting arrest conviction was defendant's only one, there is no apparent reason why he could not have obtained a license to have a handgun in his home. It is undisputed, however, that he had no such license.

Defendant does not dispute the State's power to punish him for having an unlicensed handgun in his home. He claims, however, that punishment of this crime as a class C felony is unconstitutionally severe. The People say that defendant's argument is fundamentally misconceived: the Second Amendment, according to the People, limits a state's power to punish gun possession, but does not limit the severity of punishment when

a constitutionally valid law has been violated. Severity, they say, is governed by the limitations of the Eighth Amendment ("nor [shall] cruel and unusual punishments [be] inflicted").

Defendant cites no case in which the Second Amendment has been applied to limit the penalties that may be imposed for concededly unlawful gun possession. The People, on the other hand, cite no authority holding that no such Second Amendment limits exist. The question appears to be an open one, and we need not decide it here. Assuming that there are cases in which the severity of punishment would transgress Second Amendment limits, this is not such a case.

■ We assume without deciding that the punishment imposed on defendant is subject to Second Amendment scrutiny, and we therefore consider what level of scrutiny is triggered by a Second Amendment claim. This question was left unanswered by the Supreme Court in *Heller* (*see* 554 US at 628-629). Since *Heller*, several Federal Courts of Appeals have applied intermediate scrutiny in Second Amendment cases (*see Heller v District of Columbia*, 670 F3d 1244, 1261-1264 [DC Cir 2011]; *United States v Booker*, 644 F3d 12, 25 [1st Cir 2011]; *United States v Masciandaro*, 638 F3d 458, 471 [4th Cir 2011]; *United States v Chester*, 628 F3d 673, 683 [4th Cir 2010]; *United States v Marzzarella*, 614 F3d 85, 97 [3d Cir 2010]; *United States v Reese*, 627 F3d 792, 802 [10th Cir 2010]; *United States v Skoien*, 614 F3d 638, 641-642 [7th Cir 2010 en banc]; *contra United States v Engstrum*, 609 F Supp 2d 1227 [D Utah 2009]). Indeed, the Supreme Court's *Heller* opinion itself seems to point in the direction of intermediate scrutiny. It flatly rejects the less stringent rational basis scrutiny (554 US at 628 n 27); on the other hand, it says that nothing in its opinion "should be taken to cast doubt on" a number of "longstanding prohibitions" of firearms possession (*id.* at 626-627). Such an endorsement of categorical restrictions seems hard to reconcile with the highest level of scrutiny, strict scrutiny, as usually practiced. We conclude that, assuming any Second Amendment scrutiny is appropriate here, intermediate scrutiny is the right kind.

Intermediate scrutiny requires us to ask whether a challenged statute bears a substantial relationship to the achievement of an important governmental objective (*Clark v Jeter*, 486 US 456, 461 [1988]). Penal Law § 265.03 (3), making it a class C felony for anyone previously convicted of any crime to possess an unlicensed, loaded firearm in his home or elsewhere, easily passes this test. The statute does not, it must be remembered,

forbid anyone convicted of any misdemeanor from possessing a gun on pain of class C felony punishment; most misdemeanants—including the present defendant, assuming that resisting arrest was his only prior crime—are eligible for licenses to have guns in their homes.

It is beyond dispute that preventing the criminal use of firearms is an important government objective; and keeping guns away from people who have shown they cannot be trusted to obey the law is a means substantially related to that end. More specifically, to punish severely a convicted criminal who, though eligible for a license, again violates the law by obtaining an unlicensed gun is a means well-suited to the end of assuring that lawbreakers do not have firearms. We need not decide whether a truly draconian sentence for such unlawful possession would raise constitutional problems. The $3^{1}/_{2}$ year sentence this defendant received does not.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order affirmed.