People v Tucker (2020 NY Slip Op 00739)





People v Tucker


2020 NY Slip Op 00739


Decided on January 31, 2020


Appellate Division, Fourth Department


Peradotto, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 31, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, DEJOSEPH, AND NEMOYER, JJ.


864 KA 18-00147

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MELQUAN TUCKER, DEFENDANT-APPELLANT. 






THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (ERIN A. KULESUS OF COUNSEL), FOR DEFENDANT-APPELLANT. 
CAROLINE A. WOJTASZEK, DISTRICT ATTORNEY, LOCKPORT (THOMAS H. BRANDT OF COUNSEL), FOR RESPONDENT.
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (DENNIS A. RAMBAUD OF COUNSEL), FOR INTERVENOR-RESPONDENT. 


Peradotto
 Appeal from a judgment of the Supreme Court, Erie County (Russell P. Buscaglia, A.J.), rendered January 8, 2018. The judgment convicted defendant, upon a jury verdict, of criminal possession of a firearm. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Opinion by Peradotto, J.:
We conclude that New York's criminal prohibition on the possession of a handgun in the home without a license, as applied to defendant, does not violate the Second Amendment of the Constitution of the United States.
I
Upon executing a no-knock search warrant, police officers entered a residence in which defendant and other people were present. While searching a bedroom, the police discovered a gun box in the closet containing a revolver, two cylinders, and ammunition. The police also discovered in that bedroom, among other things, defendant's driver's license and a bottle of medication prescribed to defendant. Later DNA testing also connected defendant to the revolver. It is undisputed that defendant did not have a license to possess a handgun, and defendant does not claim that he had applied for one. Additionally, when the police first entered the residence, another officer positioned outside had observed the codefendant jump from a first floor window of another bedroom and saw numerous baggies, later determined to contain heroin, fall from the codefendant's person. The police also seized a small digital scale from the kitchen of the residence.
Defendant and the codefendant were charged by joint indictment with criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]), and defendant was separately charged in the indictment with criminal possession of a firearm (§ 265.01-b [1]). Defendant moved to dismiss the criminal possession of a firearm charge on the ground that the charge is unconstitutional as applied to him because it violates his right under the Second Amendment to possess the revolver in his home for self-defense. Defendant notified the Attorney General of the State of New York pursuant to Executive Law
§ 71 that he was challenging the constitutionality of Penal Law § 265.01-b (1). The People opposed the motion, and defendant replied in further support of his constitutional challenge. Supreme Court denied the motion.
Following trial, the jury rendered a verdict finding defendant guilty of criminal possession of a firearm (Penal Law § 265.01-b [1]) but acquitting him of the drug-related charge. Defendant now appeals, raising as his primary contention that the court erred in denying his motion to dismiss the charge of criminal possession of a firearm because, as applied to him, criminal prosecution under the statute for possession of an unlicensed firearm violates his right under the Second Amendment to possess the revolver in his home for self-defense. We note at the outset that the issue before us does not involve a challenge to any particular provision of the licensing requirement; instead, the central question is whether New York may constitutionally impose any criminal sanction whatsoever on the unlicensed possession of a handgun in the home. II
New York has a long history of regulating the possession of firearms by persons within the state, particularly by way of a licensing requirement. In the latter part of the nineteenth century, the legislature enacted a law prohibiting any person under 18 years old from "hav[ing], carry[ing] or hav[ing] in his possession in any public street, highway or place in any city" a pistol or firearm of any kind without a license from a police magistrate of such city and making the violation thereof a misdemeanor (L 1884, ch 46, § 8; see also L 1883, ch 375). In 1905, the legislature amended the law to prohibit any person over 16 years old from carrying a concealed firearm in any city or village without a license and to further prohibit any person from selling or otherwise providing any pistol, revolver or other firearm to a person under 16 years old (see L 1905, ch 92, §§ 1, 2).
As has been recounted in prior cases (see e.g. Kachalsky v County of Westchester, 701 F3d 81, 84-85 [2d Cir 2012], cert denied 569 US 918 [2013]), following an increase in shooting homicides and suicides committed with revolvers and other concealable firearms during the early twentieth century, as reported in a coroner's office study, the legislature enacted the Sullivan Law to address the rise of violent crimes associated with such weapons (see id.; People ex rel. Darling v Warden of City Prison, 154 App Div 413, 422-423 [1st Dept 1913]; Revolver Killings Fast Increasing, NY Times, Jan. 30, 1911, at 4, col 4). The law made it a misdemeanor to possess without a license "any pistol, revolver or other firearm of a size which may be concealed upon the person" "in any city, village or town of th[e] state" (L 1911, ch 195, § 1). Although the First Department, in rejecting a challenge to the law shortly after its passage, relied in part on the now-repudiated basis that the Second Amendment does not apply to the states (see Darling, 154 App Div at 419), the court also reasoned that the right conferred by statute (see Civil Rights Law § 4; People v Perkins, 62 AD3d 1160, 1161 [3d Dept 2009], lv denied 13 NY3d 748 [2009]) was not violated by the law inasmuch as the legislature had "passed a regulative, not a prohibitory, act" in the proper exercise of its police powers to promote the safety of the public (Darling, 154 App Div at 423). The First Department noted that prior state laws regulating the carrying of concealed weapons had not "seem[ed] effective in preventing crimes of violence" and that the legislature had therefore determined to proceed "a step further with the regulatory legislation" concerning licensing in order to prevent criminals from possessing handguns (id.).
The law was subsequently amended and recodified, and today New York maintains its criminal prohibition on the possession of certain firearms, including pistols and revolvers, without a valid license, even if such firearms remain in one's home (see Penal Law §§ 265.00 [3]; 265.01 [1]; 265.01-b [1]; 265.20 [a] [3]).
III
The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme Court of the United States has held that the amendment confers an individual right to keep and bear arms for lawful purposes, such as self-defense in the home (see District of Columbia v Heller, 554 US 570 [2008]), and that the right is fully applicable to the states (see McDonald v City of Chicago, 561 US 742 [2010]). The Court held that self-defense is the central component of the Second Amendment right and stated that "the need for defense of self, family, and property is most acute" in the home and that handguns are "the most preferred firearm in the nation to keep and use for protection of one's home and family" (Heller, 554 US at 628-629 [internal quotation marks omitted]; see id. at 599; see also McDonald, 561 US at 767). The Court thus struck down laws that effectuated complete bans on in-home possession of [*2]handguns (see McDonald, 561 US at 791; Heller, 554 US at 635).
The Court also recognized, however, that "the right secured by the Second Amendment is not unlimited" and has never been understood as allowing one "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose" (Heller, 554 US at 626; see generally Robertson v Baldwin, 165 US 275, 281-282 [1897]). The Court made clear that its holdings "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons and the mentally ill,' laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms' " (McDonald, 561 US at 786, quoting Heller, 554 US at 627-628). Such "presumptively lawful regulatory measures" were offered "only as examples" rather than as an exhaustive list (Heller, 554 US at 627 n 26).
In light of the lack of detailed guidance offered in Heller and McDonald regarding the manner in which Second Amendment challenges to firearms legislation should be evaluated, the courts began to develop an analytical framework for reviewing such challenges (see generally New York State Rifle & Pistol Assn., Inc. v Cuomo, 804 F3d 242, 252-254 [2d Cir 2015], cert denied — US &mdash, 136 S Ct 2486 [2016]). Appellate courts, including the Court of Appeals, have generally applied or taken an approach consistent with a two-step analysis in which they first " determine whether the challenged legislation impinges upon conduct protected by the Second Amendment' " and, if so, they then "determine the appropriate level of scrutiny to apply and evaluate the constitutionality of the law using that level of scrutiny" (United States v Jimenez, 895 F3d 228, 232 [2d Cir 2018]; see e.g. People v Hughes, 22 NY3d 44, 51 [2013]; New York State Rifle & Pistol Assn., Inc., 804 F3d at 254 and n 49 [citing cases using a two-step approach]). IV
On this appeal, defendant contends that the court erred in denying his motion to dismiss the criminal possession of a firearm count (Penal Law § 265.01-b [1]) because New York's criminal prohibition on the possession of a handgun in the home without a license, as applied to him, violates his right under the Second Amendment. Although defendant mentions that Penal Law article 265 allows for prosecutorial discretion in these circumstances to determine whether to pursue a class E felony (see § 265.01-b) or a class A misdemeanor (see § 265.01; see generally William C. Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 265.01 at 106 [2017 ed]), that is not the premise of his challenge (cf. People v Eboli, 34 NY2d 281, 284 [1974]); nor does this case involve a constitutional challenge to the licensing requirements or process upon a denial or revocation of such a license (cf. Matter of Delgado v Kelly, 127 AD3d 644, 644 [1st Dept 2015], lv denied 26 NY3d 905 [2015]). Rather, defendant contends that New York may not constitutionally impose any criminal sanction whatsoever on the unlicensed possession of a handgun in the home. According to defendant, that criminal prohibition should be subjected to strict scrutiny because it implicates conduct at the core of the Second Amendment and cannot withstand such scrutiny. The People respond that defendant's contention is without merit. The Attorney General, as intervenor, responds that defendant's challenge fails at step one of the analysis and that, even at step two, an intermediate level of scrutiny would apply and the criminal prohibition on unlicensed possession of a handgun in the home would survive such scrutiny.
The Attorney General presents arguments for rejecting defendant's challenge at the first step of the analysis based on the longstanding nature of New York's criminal prohibition relative to the presumptively lawful regulatory measures listed as examples in Heller and the historical and traditional justifications for regulating firearm possession (see e.g. National Rifle Assn. of Am., Inc. v Bureau of Alcohol, Tobacco, Firearms, and Explosives, 700 F3d 185, 196-197 [5th Cir 2012], cert denied 571 US 1196 [2014]; Heller v District of Columbia, 670 F3d 1244, 1253-1255 [DC Cir 2011] [Heller II]; United States v Skoien, 614 F3d 638, 640-641 [7th Cir 2010], cert denied 562 US 1303 [2011]; see generally 1 William Blackstone, Commentaries on the Laws of England at 139-140 [1765]). However, we need not address that issue here because, even assuming, arguendo, that defendant's challenge advances beyond the first step of the analysis, we conclude that New York's criminal prohibition passes constitutional muster under Second Amendment scrutiny at the second step (see generally Jimenez, 895 F3d at 234). Specifically, we conclude for the reasons that follow that, contrary to defendant's contention, the [*3]appropriate level of scrutiny is intermediate and the criminal prohibition on the possession of a handgun in the home without a license withstands such scrutiny.
With regard to the appropriate level of scrutiny, the Court of Appeals in Hughes considered the defendant's challenge to his conviction of criminal possession of a weapon in the second degree stemming from his unlicensed possession of a handgun in the home. The defendant's challenge was on the ground that the inapplicability of the home exception due to his prior misdemeanor conviction (see Penal Law §§ 265.02 [1]; 265.03 [3]), which effectively elevated his criminally culpable conduct from a class A misdemeanor to a class C felony, infringed upon his Second Amendment right (22 NY3d at 48-50). The Court—assuming, without deciding, that Second Amendment scrutiny was appropriate—applied intermediate scrutiny after concluding that several federal appellate courts had applied that level of scrutiny in Second Amendment cases and that the Heller opinion itself pointed in that direction (id. at 51).
Second Circuit precedent also holds that "[l]aws that place substantial burdens on core rights are examined using strict scrutiny" whereas "laws that place either insubstantial burdens on conduct at the core of the Second Amendment or substantial burdens on conduct outside the core of the Second Amendment (but nevertheless implicated by it) can be examined using intermediate scrutiny" (Jimenez, 895 F3d at 234). Here, the record does not establish that New York's licensing requirement as backed by a criminal penalty for noncompliance imposes anything more than an insubstantial burden on conduct at the core of the Second Amendment, i.e., the right of a law-abiding, responsible citizen to possess a handgun in the home for self-defense (see generally id. at 234-235). Contrary to defendant's contention that New York "prevent[s] citizens from protecting themselves in their home[s] and penaliz[es] them for doing so," state law does not effectuate a complete ban on the possession of handguns in the home (cf. McDonald, 561 US at 750; Heller, 554 US at 629; see generally Perkins, 62 AD3d at 1161). Instead, "New York's criminal weapon possession laws prohibit only unlicensed possession of handguns. A person who has a valid, applicable license for his or her handgun commits no crime" (Hughes, 22 NY3d at 50; see Penal Law
§ 265.20 [a] [3]). Moreover, the Court of Appeals has noted that a license to possess a handgun in the home is not "difficult to come by" (Hughes, 22 NY3d at 50). There is no evidence on this record to support defendant's conclusory assertions that the expense and logistics of obtaining a license constitute substantial burdens on the right to possess a handgun in the home for self-defense (see Kwong v Bloomberg, 723 F3d 160, 164-165 [2d Cir 2013], cert denied 572 US 1149 [2014]; see also United States v Marzzarella, 614 F3d 85, 97 [3d Cir 2010], cert denied 562 US 1158 [2011]; see generally Heller II, 670 F3d at 1254-1255).
In light of the holding in Hughes, and as reinforced by persuasive federal case law, we conclude that intermediate scrutiny is the appropriate level by which to evaluate the constitutionality of the criminal prohibition on the possession of a handgun in the home without a license.
With regard to that evaluation, "[i]ntermediate scrutiny requires us to ask whether a challenged statute bears a substantial relationship to the achievement of an important governmental objective" (Hughes, 22 NY3d at 51). First, it is beyond dispute that "New York has substantial, indeed compelling, governmental interests in public safety and crime prevention" (Kachalsky, 701 F3d at 97; see Hughes, 22 NY3d at 52; New York State Rifle & Pistol Assn., Inc., 804 F3d at 261-262; Schulz v State of N.Y. Exec., 134 AD3d 52, 56-57 [3d Dept 2015], appeal dismissed 26 NY3d 1139 [2016], reconsideration denied 27 NY3d 1047 [2016], lv denied 27 NY3d 907 [2016]). Those concerns include the state's "substantial and legitimate interest and[,] indeed, . . . grave responsibility, in insuring the safety of the general public from individuals who, by their conduct, have shown" that they should not be entrusted with a dangerous instrument (Matter of Galletta v Crandall, 107 AD3d 1632, 1632 [4th Dept 2013] [internal quotation marks omitted]). Further, we reject defendant's contention that the state's interest in this regard does not extend into the home and is limited to "prevent[ing] public, violent conduct from illegal gun use" (emphasis added). It is well established that the state's interest includes protecting persons within the home from violence and danger attributable to individuals who pose a safety risk if allowed to possess a handgun (see Delgado, 127 AD3d at 644; Matter of Lipton v Ward, 116 AD2d 474, 475-477 [1st Dept 1986]).
Second, the criminal prohibition on the unlicensed possession of a handgun, including in [*4]the home, bears a substantial relationship to the state's interests. "In the context of firearm regulation, the legislature is far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying [and possessing] firearms and the manner to combat those risks" (Kachalsky, 701 F3d at 97). We are satisfied that New York " has drawn reasonable inferences based on substantial evidence' " in formulating its judgment on the subject at issue (id.; see e.g. id. at 97-98; Rep of the NY State Joint Legis Comm on Firearms and Ammunition, 1965 NY Legis Doc No. 6 at 7-18). Contrary to defendant's assertions, we conclude that the possibility of a criminal penalty is well-suited to promote compliance with the licensing requirement for handgun possession in furtherance of the state's interests (see Hughes, 22 NY3d at 52). V
Defendant further contends that reversal is required because the court erred in denying his Batson application concerning the prosecutor's use of a peremptory challenge to exclude a black prospective juror. We reject that contention. Inasmuch as the prosecutor offered a race-neutral reason for the challenge and the court thereafter "ruled on the ultimate issue" by determining, albeit implicitly, that those reasons were not pretextual, the issue of the sufficiency of defendant's prima facie showing of discrimination at step one of the Batson test is moot (People v Smocum, 99 NY2d 418, 423 [2003]; see People v Jiles, 158 AD3d 75, 78 [4th Dept 2017], lv denied 31 NY3d 1149 [2018]; cf. People v Bridgeforth, 28 NY3d 567, 575-576 [2016]). Contrary to defendant's contention, we conclude that the court properly determined at step two that the People met their burden of offering a facially race-neutral explanation for the challenge (see People v Lee, 80 AD3d 877, 879 [3d Dept 2011], lv denied 16 NY3d 833 [2011]). Defendant failed to preserve for our review his contention that the prosecutor's explanation was pretextual because the prosecutor engaged in disparate treatment of similarly situated prospective jurors (see People v Lucca, 165 AD3d 414, 414 [1st Dept 2018], lv denied 32 NY3d 1126 [2018]; Lee, 80 AD3d at 879; see generally Smocum, 99 NY2d at 423), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
* * *
Accordingly, we conclude that the judgment convicting defendant of criminal possession of a firearm (Penal Law § 265.01-b [1]) should be affirmed.
Entered: January 31, 2020
Mark W. Bennett
Clerk of the Court