# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 63
The People &c.,
      Respondent,
   v.
Pablo Pastrana,
      Appellant.

Mark W. Zeno, for appellant.
Nicole Neckles, for respondent.
Hon. Letitia James, New York State Attorney General, intervenor.

TROUTMAN, J.:

In June of 2015, defendant was driving a vehicle that was stopped at a roadblock set up by police on a bridge leading from Manhattan into the Bronx on the same day as the annual Puerto Rican Day Parade. After officers smelled marijuana in the car, they

conducted a search, during which they recovered a loaded firearm. In 2018, defendant was convicted, upon a jury verdict, of criminal possession of a weapon in the second degree, criminal possession of marijuana in the fifth degree, and unlawful possession of marijuana. The Appellate Division affirmed (205 AD3d 461 [1st Dept 2022]), and a Judge of this Court granted defendant leave to appeal (38 NY3d 1135 [2022]). We reject defendant's contentions on this appeal as without merit or unpreserved.

I.

Defendant first contends that the People did not meet their burden at the suppression hearing to demonstrate the constitutional validity of the roadblock pursuant to which his vehicle was stopped. We conclude that the lower courts properly determined that the People met their burden.

At the suppression hearing, the People offered the testimony of a detective who was responsible for questioning the driver of vehicles that were stopped pursuant to the roadblock. That detective testified that he was assigned to conduct a vehicle checkpoint on the bridge in question, and that the purpose of the checkpoint was vehicle safety. To that end, the detective asked each driver he approached to produce their driver's license, insurance, and registration. The detective would also check for "improper inspections, equipment, [and] seat belts." The purpose of the roadblock was not specifically to check for drunk drivers, but the detective testified that if police found an intoxicated driver, they would take appropriate action. The checkpoint was conducted during daylight hours and marked by cones and two vans.

The detective further testified that the procedure for the checkpoint was to stop every third car that passed through. The detective was not responsible for counting cars and directing them to pull over, but he testified that defendant's car was pulled over pursuant to this established procedure. The detective asked defendant to roll down the windows in the vehicle, and when defendant complied, there was a strong odor of marijuana coming from the vehicle. The detective testified that he observed marijuana in plain view in the car. The detective then commenced a search of the car, and after noticing a strong odor of marijuana near the glove box, he opened it, finding a larger quantity of marijuana and a loaded firearm. Defendant was then arrested.

The detective's testimony satisfied the People's burden to demonstrate a permissible primary programmatic purpose for the roadblock, that it was maintained "in accordance with a uniform procedure which afforded little discretion to operating personnel," and that the checkpoint was conducted with fair warning to motorists and with precautions regarding motorist safety (*People v Scott*, 63 NY2d 518, 526 [1984]; *see generally City of Indianapolis v Edmond*, 531 US 32 [2000]). That testimony established that the primary purpose of the checkpoint was roadway safety, not general crime control (*see Indianapolis*, 531 US at 44; *People v Jackson*, 99 NY2d 125, 131-132 [2002]; *Matter of Muhammad F.*, 94 NY2d 136, 145-146 [1999], *cert denied* 531 US 1044 [2000]). It further established that the checkpoint was maintained in accordance with a uniform procedure that gave little discretion to operating personnel, i.e., every third car was stopped (*see Scott*, 63 NY2d at 526). Finally, the detective's testimony established that the roadblock was conducted with

adequate precautions that gave fair warning to motorists (*cf. Muhammad F.*, 94 NY2d at 147).

Defendant's challenge to the validity of the checkpoint is, in large part, essentially a challenge to the credibility of the detective's testimony. But this Court has no power to revisit the factual finding of the suppression court that the detective's testimony was credible (*see People v Concepcion*, 38 NY2d 211, 213 [1975]). Moreover, to the extent defendant contends that the decision to set up a roadblock was discriminatory, that contention is not supported by the record. The roadblock was set up on the day of the National Puerto Rican Day Parade, and the record demonstrates that the post-parade traffic was particularly heavy. Thus, the reasonable inference to be drawn from the detective's testimony is that the roadway safety checkpoint was chosen for that date and location because of the large volume of traffic that would be crossing the bridge.

The People's evidentiary showing as to the authorization for the roadblock certainly could have been more robust (*see e.g. Scott*, 63 NY2d at 523 [written documentation regarding authorization for roadblock]; *Jackson*, 99 NY2d at 128 [testimony from senior officer responsible for initiating the roadblock]). Nevertheless, we conclude that the detective's testimony and the reasonable inferences to be drawn therefrom were sufficient, albeit barely, to satisfy the People's burden.

II.

Defendant further contends that the Marihuana Regulation and Taxation Act (MRTA) should be applied retroactively to his case to render the search of his vehicle unlawful. The Appellate Division has rejected that contention (*see e.g. People v Boyd*, 206

AD3d 1350, 1354 [3d Dept 2022], *lv denied* 38 NY3d 1149 [2022]; *People v Babadzhanov*, 204 AD3d 685, 686-687 [2d Dept 2022], *lv denied* 38 NY3d 1069 [2022]; *People v Vaughn*, 203 AD3d 1729, 1730 [4th Dept 2022], *lv denied* 38 NY3d 1036 [2022]). We agree with the Appellate Division and therefore conclude that defendant's contention is without merit.

The MRTA, which became law in 2021 (*see* L 2021, ch 92), added Penal Law § 222.05, which provides that with certain exceptions not relevant here, the odor of cannabis or burnt cannabis, or the possession of cannabis in the amounts authorized by the MRTA, shall not be the basis for a "finding or determination of reasonable cause to believe a crime has been committed" (*id.* § 222.05 [3]). In short, Penal Law § 222.05 (3) provides that the odor of marijuana or possession of marijuana in legally authorized amounts can no longer be the basis for a police search.

Penal Law § 222.05 became effective on March 31, 2021, nearly six years after the search of defendant's vehicle was conducted. If the search of defendant's vehicle had been conducted after that effective date, it would not be valid under the MRTA, given that it was based solely upon the odor of cannabis. Defendant contends, however, that this provision of the MRTA should be applied retroactively to invalidate searches that occurred *before* the effective date of the statute.

" 'It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it' " (*People v Galindo*, 38 NY3d 199, 207 [2022], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 584

[1998]). Nothing in the text or legislative history of the MRTA requires or supports the conclusion that the legislature intended for the newly-enacted Penal Law § 222.05 to apply retroactively to invalidate searches that were conducted before the effective date of the statute.* The fact that Penal Law § 222.05 was to take effect "immediately" merely supports the conclusion that as of March 31, 2021, law enforcement could no longer conduct searches based solely on the odor of cannabis. "[T]he date that legislation is to take effect is a separate question from whether the statute should apply to claims and rights then in existence," and the legislature's expression that a statute is to take effect immediately is equivocal in a retroactivity analysis (*Majewski*, 91 NY2d at 583).

Importantly, the legislature included provisions in the MRTA intended to remedy past discriminatory practices regarding the policing of marijuana, including provisions regarding vacatur of prior marijuana-related convictions (*see* CPL 440.46-a). Thus, when the legislature intended the MRTA to impact convictions that became final before the law's effective date, it provided express provisions to that effect. There is no similar expression of legislative intent with respect to Penal Law § 222.05. Moreover, applying the MRTA

---

* We reject defendant's assertion that an appeal to the Appellate Division from a judgment of conviction and sentence is a "criminal proceeding" within the meaning of Penal Law § 222.05 (3). The Criminal Procedure Law separately defines "criminal court" and "intermediate appellate court" and contains different provisions applicable to each court (*see* CPL 1.20 [19], [22]; CPL article 450). Pursuant to these provisions, intermediate appellate courts review appeals as of right from criminal proceedings, but an appeal as of right does not itself constitute a "criminal proceeding" (*see* CPL 1.20 [18]). Like Judge Halligan, we do not address whether Penal Law § 222.05 applies in a post-enactment suppression hearing regarding a pre-enactment search, as that issue is not before us (*see* Halligan, J., dissenting op at 2 n 1).

retroactively to invalidate searches that have already occurred would not deter any police misconduct because, as defendant concedes, at the time police searched his car in 2015, a search based on the odor of marijuana was lawful. Defendant points to no provision in the text or legislative history of the MRTA that would support the staggering impact of the retroactive application he proposes: the vacatur of scores of convictions, even those for weapons possession or violent crimes, because the police conducted a search based on the odor of marijuana that was lawful at the time. Nothing in the text of the statute or the legislative history supports a conclusion that this was the legislature's intent.

III.

Finally, defendant contends that his conviction of criminal possession of a weapon in the second degree is unconstitutional pursuant to the Second Amendment to the United States Constitution, relying on the Supreme Court's 2022 decision in *New York State Rifle & Pistol Association, Inc. v Bruen* (597 US —, 142 S Ct 2111 [2022]). For the reasons explained in *People v Cabrera* (decided today), we conclude that defendant's contention is unpreserved for appellate review.

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (dissenting):

I agree for the reasons discussed by the majority that defendant Pablo Pastrana's challenge to the roadblock that led to the search of his vehicle and the eventual discovery of an unlicensed loaded firearm and illegal amounts of marijuana is without merit, and that the Marijuana Regulation and Taxation Act is not retroactive. However, for the reasons I discuss in my dissent in *People v Garcia*, decided today, defendant's Second Amendment facial challenge under *New York State Rifle & Pistol Assn., Inc. v Bruen* (142 S Ct 2111 [2022]) is preserved but meritless.

Defendant's alternative as-applied constitutional challenge to the ban on licensing people with felonies requires remittal for further development of a record for appellate review. Defendant has standing to raise both of these claims for the reasons discussed in *Garcia*. I agree with the majority that the lack of an adequate record renders it impossible at this juncture to consider defendant's claim that there is no historical tradition to support New York's universal prohibition on people with felonies obtaining gun licenses. However, defendant had no reason to develop such record pre-*Bruen*. And the prosecutor had no opportunity to establish a historical tradition to justify the restrictions and the sentence because until *Bruen* that was not the standard by which to assess these types of constitutional challenges. Instead, courts in New York, and throughout the country, applied intermediate scrutiny's means-end test in deciding whether the gun regulation is substantially related to achieving an important governmental interest, such as public safety (*see, e.g.*, *Kachalsky v County of Westchester*, 701 F3d 81, 85 [2d Cir 2012]; *People v Hughes*, 22 NY3d 44, 50-51 [2013]; *Kanter v Barr*, 919 F3d 437, 447 [7th Cir 2019]).

I would remand for development of the record in accordance with the test articulated in *Bruen*. Otherwise, we risk depriving defendant "of a State forum in which his arguments could be heard" (*People v Patterson*, 39 NY2d 288, 296 [1976], *affd sub nom. Patterson v New York*, 432 US 197 [1977]). Remittal is especially appropriate given that other defendants—convicted after *Bruen* was issued—are raising the same (preserved) claims in our courts. We should not deny defendant the same opportunity to build a record and for the prosecutor to do the same. Our "procedural rules should be so designed as to keep unjust results to a minimum" (*People v Finch*, 23 NY3d 408, 416 [2014]).

HALLIGAN, J. (dissenting):

I would hold that the People did not meet their burden at the suppression hearing to demonstrate the constitutional validity of the roadblock where Pastrana's car was stopped. As the majority correctly notes, Detective Veit testified at the suppression hearing that the

- 1 -

goal of the checkpoint was vehicular safety, which is a permissible primary programmatic purpose (*Delaware v Prouse*, 440 US 648, 658 [1979]). But when measured against our prior cases, the record does not adequately establish that the selection of the checkpoint's particular date and location would be effective in serving that objective, or that the checkpoint was properly authorized.[1]

Both this Court and the U.S. Supreme Court have used a balancing test to determine whether a suspicionless stop is reasonable (*see People v Abad*, 98 NY2d 12, 16-17 [2002], citing *Brown v Texas*, 443 US 47, 50 [1979]). One element, termed the "effectiveness" factor, is "the degree to which the seizure advances the public interest" (*id.* at 17). Here, the People offered no testimony as to why this date and location were selected for the checkpoint. The majority concludes a reasonable inference can be drawn that it was because a large number of cars would be crossing the bridge, given the parade scheduled for that day. That may indeed have been why the roadblock was conducted at that time and place, but the People did nothing to establish the point.

More concerning is the absence of any testimony regarding how the checkpoint was authorized. In *People v Scott*, this Court emphasized that "a plan embodying explicit, neutral limitations on the conduct of individual officers" is essential to adequately protect

---

[1] With respect to whether the Appellate Division properly declined to apply the MRTA's probable cause provision to reverse defendant's conviction, I agree with the majority that the statutory term "criminal proceeding" cannot fairly be read to encompass direct appeals at the Appellate Division (Penal Law § 222.05 [3]). Whether that provision, which governs a "finding or determination of reasonable cause," applies to a post-enactment suppression hearing concerning a pre-enactment search is a closer question in light of the statutory text, and given that it is not squarely presented, I would not reach it here.

Fourth Amendment concerns (63 NY2d 518, 525-526 [1984], quoting *Brown*, 443 US at 51). Such a plan should ensure that "officers in the field" do not have "unfettered discretion" in order to reduce the risk of arbitrary invasions (*Matter of Muhammad F.*, 94 NY2d 136, 142 [1999], quoting *Brown*, 443 US at 51; *see also United States v Martinez-Fuerte*, 428 US 543, 559 [1976] ["The location of a fixed checkpoint is not chosen by officers in the field, but by officials responsible for making overall decisions as to the effective allocation of limited enforcement resources"]; *Delaware*, 440 US at 654-655 [Fourth Amendment requires safeguards to "assure that the individual's reasonable expectation of privacy is not subject to the discretion of the official in the field"] [internal quotation marks omitted]).

Scott provides an example of how this can be accomplished: the checkpoint there was "established pursuant to a written directive of the County Sheriff" that detailed the purpose for the stops and procedures for selecting sites and conducting the stops, and the locations were "selected in advance by senior personnel" (*Scott*, 63 NY2d at 522-524). "[T]he specific procedures devised and promulgated to law enforcement personnel by the head of their department" allowed the court to conclude that the checkpoint "was being maintained in accordance with a uniform procedure which afforded little discretion to operating personnel," among other factors (*id.* at 526; *see also Abad*, 98 NY2d at 15 [noting that guidelines for livery cab stop program were "spelled out" in Police Department Operations Order]).

As with the reason for selecting the particular date and location for the checkpoint, proper authorization was not established by the People. Detective Veit testified that when

on patrol, "[w]e receive a specific assignment"; that on the day in question, he "was assigned to the Puerto Rican Day Parade, and [his] assignment was a vehicle checkpoint on the University Heights bridge and Fordham Road"; and that this was a "unique assignment." Whether that suffices to show proper authorization is not a question of the detective's credibility, but whether the record includes any information indicating how, or by whom, the checkpoint was approved. To the extent any additional inference could have been drawn from Detective Veit's comments, it would stretch too far to ensure that officer discretion was sufficiently constrained for purposes of the Fourth Amendment.

Order affirmed. Opinion by Judge Troutman. Judges Garcia, Singas and Cannataro concur. Judge Rivera dissents in an opinion. Judge Halligan dissents in a separate opinion, in which Chief Judge Wilson concurs.

Decided November 21, 2023