People v Shilman (2024 NY Slip Op 24250)

[*1]

People v Shilman

2024 NY Slip Op 24250

Decided on September 24, 2024

Supreme Court, Bronx County

Stone, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on September 24, 2024
Supreme Court, Bronx County

The People of the State of New York

against
Vadim Shilman, Defendant.

Ind. No. 72654-22

ADA Emily Aldridge, Office of the Bronx County District Attorney, for the People.
Carola Beeney, Esq, The Center for Appellate Litigation, for the Defendant.

Audrey E. Stone, J.

By notice of motion filed via EDDS on May 28, 2024, the defendant moves under CPL §§ 440.10(1)(h), and 440.20, for vacatur and dismissal of the September 15, 2022, judgment of the Supreme Court, Bronx County (Lorenzo, J.), convicting him by guilty plea of one count of criminal possession of a weapon in the second degree (Penal Law § 265.03[3]) and imposing a determinate sentence of five and one-half years followed by five years of post-release supervision. In the alternative, the defendant seeks reduction of the count of conviction from the Class C violent felony of criminal possession of a weapon in the second degree under Penal Law § 265.03(3) to the lesser Class E non-violent felony of criminal possession of a firearm under Penal Law § 265.01-b(1). The People opposed by affirmation filed via EDDS on July 31, 2024, the defendant replied by affirmation filed via EDDS on August 21, 2024, and the People submitted a sur-reply letter via EDDS on August 22, 2024. Upon review of the parties' submissions, the Court denies the motion without a hearing.
 Background
The defendant's conviction arose out of his arrests, on October 23, 2021, and October 26, 2021, for firearm possession. The allegations involving these two arrests included the following. On October 23, 2021, the defendant's father called 911. When the police arrived at the home, they recovered three firearms, including two loaded pistols. One pistol had a magazine capable of holding thirty rounds of ammunition. Police also observed what appeared to be heroin. Criminal charges were filed, the defendant was arraigned, and released under supervision. On October 26, 2021, the defendant's father called 911 after the defendant ripped the showerhead from his father's bedroom and urinated on the floor. The defendant's father wanted help relating to his son's mental health. Upon entering, officers uncovered an alleged AR-15 assault rifle in plain view in the defendant's bedroom. The officers obtained a search warrant, pursuant to which they recovered four more firearms, including another AR-15 assault rifle, as well as magazines, ammunition, and apparent fentanyl with a scale. A second complaint was filed.
The charges from both arrests of the defendant were consolidated into a single 53-count indictment upon which the People proceeded against the defendant in Supreme Court. Included in the indictment were charges of Penal Law § 265.03(3), Class C violent felonies, for possession of an unlicensed loaded firearm after having been previously convicted of any crime. There were two predicate convictions that supported these charges. On April 27, 2002, the defendant was convicted of the unclassified misdemeanor of driving while his ability was impaired by drugs under Vehicle and Traffic Law § 1192(4). On April 30, 2003, the defendant was convicted of the Class A misdemeanor of criminal possession of a weapon in the fourth degree under Penal Law § 265.01(1).
On August 24, 2022, the defendant resolved the indictment by pleading guilty to one count of criminal possession of a weapon in the second degree under Penal Law § 265.03(3) concerning his possession, on October 23, 2021, of a loaded .9-millimeter Taurus pistol. At no time prior to his plea and sentence did the defendant object to the constitutionality of the charges filed against him and specifically the count of Penal Law §265.03(3) that he stands convicted of.

Analysis
The defendant raises several issues both procedural and substantive. For the reasons stated below, the Court denies the motion as procedurally defective, and substantively without merit.
The defendant relies on CPL §§ 440.10(1)(h), and 440.20 as his basis for seeking two forms of relief. First, the defendant requests that, should the Court grant his motion, the Court enter an order of dismissal. In the alternative, the defendant asks that his conviction under Penal Law § 265.03(3) be reduced to Penal Law § 265.01-b (1) and a re-sentencing ordered. Procedurally, the defendant does not meet the threshold for relief under either provision. 
CPL § 440.20 is a vehicle post-conviction to set aside a sentence. This provision does not provide a basis to vacate a conviction, reduce a plea, and order a new sentence. Here, the defendant requests that the Court vacate his conviction to Penal Law § 265.03(3), a class C violent felony, reduce his plea to a lesser court of Penal Law § 265.01-b (1), a Class E non-violent felony, and then sentence him accordingly. Under Penal Law § 265.01-b (1), the defendant would face a maximum sentence of 1 1/3 to 4 years in state prison. Accordingly, any sentence pursuant to this section would be a reduction from the negotiated sentence of 5 1/2 years followed by 5 years post-release supervision. The defense is not asking for the sentence imposed to be set aside, but for the count of conviction to be reduced, and following that modification, a new sentence imposed. As Mr. Shilman attacks both his conviction and sentence, CPL § 440.20 does not apply as a basis for relief. 
CPL § 440.10(1) permits a postconviction motion seeking vacatur of the "judgment," that is, both the conviction and sentence together (see CPL § 1.20[15]). A court must deny a motion under this provision where sufficient facts appear in the record to raise the issue on appeal (CPL § 440.10[2][b]). The defendant did not raise the Second Amendment claim asserted on this motion prior to the entry of his guilty plea. As a result, the argument inarguably was unpreserved for appeal (see CPL § 470.05[2]; People v Cabrera, 41 NY3d 35, 51 [2023]; People v Bailey, 32 NY3d 70, 78 [2018]). The People contend that there are no new or additional facts that would be necessary for an appellate court to review his contentions. Specifically, that the reasons the defendant sets forth in his affidavit for possessing a gun bear no relevance to whether his conviction for unlicensed possession raises a Second Amendment claim. Thus, the People contend CPL § 440.10(2)(b) poses a procedural bar.
The defendant argues on this motion that his contentions are a "mixed claim" that must be raised via post-verdict motion, and which could not have been properly developed during the underlying proceedings (see People v Maxwell, 89 AD3d 1108, 1109 [2d Dept 2011], lv denied 18 NY3d 926 [2012]). A "mixed claim" is one that requires facts appearing on the record, as well as those appearing off the record (Maxwell, 89 AD3d at 1109). Since such a claim turns on additional facts outside the record, its litigation requires that the record be expanded with a postconviction motion (id.) The defendant argues that he satisfies these criteria, because his postconviction motion includes as an exhibit an affidavit by him setting out his rationales for possessing a gun. In essence, the defendant argues that this necessary information was not on the record pre-adjudication and must be developed as part of his postconviction motion. 
Here, the Court finds that there were sufficient facts on the record for the defendant to have raised his claim before pleading guilty (see People v Crum, 184 AD3d 454, 455 [1st Dept. 2020], lv denied 35 NY3d 1065 [2020]). The defendant's legal arguments do not turn on the resolution of any new or additional facts. As the People maintain, the defendant could have raised a challenge based on the Supreme Court ruling in New York State Rifle & Pistol Ass'n v. Bruen, 597 US 1 (2022), which had been decided prior to the entry of his guilty plea on August 24, 2022. The defendant challenges his conviction and sentence for unlicensed possession of a firearm, and the constitutionality of Penal Law § 265.03(3). This is a legal issue that could have been raised pre-plea, and the defendant's reasons for having a gun bear no relevance.
Yet, even absent this procedural bar, the Court finds no substantive basis for granting the defendant's motion. The principal argument set forth by the defendant is that considering the recent Supreme Court ruling in Bruen (597 US 1 [2022]) his conviction under Penal Law § 265.03(3) is unconstitutional under the Second Amendment. In Bruen, the United States Supreme Court abrogated the means-end scrutiny test applied by multiple, lower federal courts to Second Amendment challenges (597 US at 19). In its place, the Supreme Court articulated a two-step framework based on the amendment's plain text and the United States' historical tradition of firearm regulation (id. at 24). At the first step, a court must determine whether the Second Amendment's "plain text covers an individual's conduct," and if it does, the conduct is presumptively protected by the United States Constitution (id.). If that first step is satisfied, then the Government must "justify its regulation by demonstration that it is consistent with the Nation's historical tradition of firearm regulation" (id.).
The Supreme Court cautioned that the "analogical reasoning" required by its test necessitated "only that the government identify a well-established and representative historical analogue, not a historical twin" (597 US at 30 [emphasis in the original omitted]). Building on that guidance, in United States v Rahimi, the Supreme Court emphasized that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791" (602 US —, 144 S Ct 1889, 1897-1898 [2024]). The Supreme Court noted that "if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulation," because "[w]hy and how the regulation burdens the right are central to [the Second Amendment] inquiry" (id. at 1898).
Prior to the Supreme Court's decisions in Bruen and Rahimi, the New York State Court of Appeals had considered and rejected arguments nearly identical to those set forth by the defendant (see People v Hughes, 22 NY3d 44, 51-52 [2013]). Concededly, the Court of Appeals reached its holding by application of the means-end scrutiny test nullified by Bruen (Hughes, 22 [*2]NY3d at 51). Yet, abrogation of the mean-end scrutiny test does not call into question every conclusion reached about the Second Amendment pre-Bruen (see e.g. United States v. Canada, 103 F.4th 257, 258 [4th Cir. 2024], pet for cert docketed sub nom Canada v United States [No. 24-5391, August 26, 2024] ["No matter which analytical path we choose, they all lead to the same destination"]; Oregon Firearms Fed'n, Inc. v. Brown, 644 F Supp 3d 782, 797 [D Or 2022], appeal dismissed, No. 22-36011, 2022 WL 18956023 [9th Cir December 12, 2022 ["In discussing the ways in which Bruen altered the analysis for Second Amendment challenges, it is equally important to recognize what Bruen did not do"]).
In Hughes, the Court held: "It is beyond dispute that preventing the criminal use of firearms is an important government objective; and keeping guns away from people who have shown they cannot be trusted to obey the law is a means substantially related to that end" (22 NY3d at 52). This analysis closely follows the Supreme Court's guidance in Rahimi, that the "appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition" (144 S Ct at 1898). Penal Law § 265.03(3) seeks to deter those who have already shown an unwillingness to follow the law from possessing an unlicensed, loaded firearm. Licensure falls within the United States' historical tradition of firearm regulation. The Supreme Court has repeatedly acknowledged, from Heller, to McDonald, and again, recently, in Bruen, that the Second Amendment permits regulation and limits on firearm access and licensure (see Bruen, 597 US at 30 [Second Amendment reasoning imposes neither "regulatory straightjacket nor a regulatory blank check"]; McDonald v City of Chicago, Ill. 561 US 724, 786 [2010] [right to bear arms is not the right to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose"] [internal quotation marks omitted]; District of Columbia v Heller, 554 US 570, 626, [2008] ["the right secured by the Second Amendment is not unlimited"]). States' power to regulate licensure, subject to constitutional limitation, is a recognized part of the United States' tradition of firearm regulation. State criminal laws that punish and deter unlicensed firearm possession are an integral piece of enforcing individual state licensing regimes. Nothing in Bruen suggests that a person may disregard licensing laws and then successfully invoke the Second Amendment to attack the severity of the resulting punishment. 
In arguing that Bruen requires a different outcome here than in Hughes, the defendant points to federal cases where courts have questioned the constitutionality of the federal felon in possession laws contained in 18 USC § 922(g)(1) (see e.g. Range v. Att'y Gen. United States of Am., 69 F 4th 96 [3d Cir. 2023], cert. granted, judgment vacated sub nom Garland v. Range, 144 S Ct 2706 [2024]; United States v Martin, — F Supp 3d —, No. 23-CR-40048-SMY, 2024 WL 728571, *1 [SD IL 2024]). This comparison misses the mark. While 18 U.S.C.§ 922(g)(1) disarms felons, Penal Law § 265.03(3) falls within a continuum of punishment for possession of an unlicensed firearm. According to the legislative history, Penal Law § 265.03(3) was "intended to increase the penalty for criminal possession of a loaded firearm" where a person possessed a loaded firearm "in his home or place of business and has previously been convicted of a crime or he possesses an assault weapon" (Senate Introducer Mem. in Support, Bill Jacket, L. 2006, ch. 745 at 3; see also People v Jones, 22 NY3d 53, 59 [2013]). Penal Law § 265.03(3) resembles many other New York State crimes that create greater penalties where people with prior convictions engage in unlawful conduct (see e.g. Penal Law §§ 120.50[2] [Stalking in the third degree]; 130.53 [Persistent sexual abuse]; 130.95[3] [Predatory sexual assault]; 165.10[1] [Auto stripping in the second degree]; 190.83[2] [Unlawful possession of personal information [*3]in the first degree]; 215.52[2],[3] [Aggravated criminal contempt]; 240.30[5] [Aggravated harassment]; 120.13 [Menacing in the first degree]; VTL 1193[c] [Operating a Motor Vehicle while under the influence of alcohol or drugs]; VTL 511[2][i] [Operating a Motor Vehicle while license suspended]). The statute before the Court operates as an enhanced sentencing law, not as a New York State counterpart to the federal felon in possession law. 18 USC § 922(g)(1) disarms felons as a class. Any person possessing an unlicensed firearm in New York State is subject to prosecution.
As an additional basis, defendant argues that his rights under the Fourteenth Amendment have been violated since the Second Amendment equally protects individuals who possess weapons in their home regardless of whether the person has a prior criminal conviction. This argument misstates the conduct criminalized by this statute. Penal Law § 265.03(3) criminalizes unlicensed possession of a loaded firearm by people with prior convictions. The defendant's guilt turns on his conviction for possession of an unlicensed loaded firearm, not the situs of his possession. Further, similar attempts to reframe a Second Amendment challenge as burdening a different constitutional right under the Fourteenth Amendment have been rejected by federal courts (see United States v. Sitladeen, 64 F 4th 978, 988-89 [8th Cir 2023], rehearing denied 2023 WL 3330794 [May 10, 2023]; Pena v Lindley, 898 F 3d 969, 986 [9th Cir 2018], cert denied sub nom Pena v Horan, 141 S Ct 108 [Mem]; United States v Carey, 602 F 3d 738, 741 n 2 [6th Cir. 2010], cert denied 562 US 895 [2010]).
For all these reasons, the Court denies the defendant's motion without a hearing (see CPL §440.30[4][a]).
This constitutes the decision and order of the Court.
Dated: September 24, 2024
Bronx, New York
Audrey E. Stone, A.J.S.C.