People v Wilson (2021 NY Slip Op 01803)





People v Wilson


2021 NY Slip Op 01803


Decided on March 25, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 25, 2021

107516

[*1]The People of the State of New York, Respondent,
v
Casey Wilson, Appellant.

Calendar Date: June 1, 2018

Before: Egan Jr., J.P., Lynch, Clark and Colangelo, JJ.


Catherine A. Barber, Guilderland, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Susan Rider-Ulacco of counsel), for respondent.



Clark, J.
Appeal from a judgment of the County Court of Chemung County (Hayden, J.), rendered November 3, 2014, upon a verdict convicting defendant of the crimes of burglary in the first degree (two counts), rape in the first degree (two counts), criminal sexual act in the first degree (two counts), aggravated sexual abuse in the third degree (two counts) and robbery in the first degree.
Based upon acts perpetrated against separate victims in June 2011 and September 2013, defendant was convicted of two counts of burglary in the first degree, two counts of rape in the first degree, two counts of criminal sexual act in the first degree, two counts of aggravated sexual abuse in the third degree and one count of robbery in the first degree. County Court sentenced defendant to various concurrent prison terms, the longest of which was 25 years, followed by 10 years of postrelease supervision. Defendant appealed and, when such appeal was previously before this Court, this Court found that defendant's convictions were supported by legally sufficient evidence and the weight of the evidence (164 AD3d 1012 [2018]). However, this Court found that defense counsel was ineffective for failing to request a Frye hearing to challenge the reliability of a computer program — the TrueAllele Casework system — used to determine the statistical probability of a match between defendant's DNA and the DNA found inside lavender gloves discovered near the 2013 victim's apartment and argued to be the same gloves worn by an individual captured in video footage outside the apartment on the morning in question. We therefore withheld decision and remitted the matter to County Court for a posttrial Frye hearing to consider the reliability of the TrueAllele Casework system at the time the DNA analysis was performed. County Court (Baker, J.) conducted that Frye hearing and ultimately concluded that the TrueAllele Casework system was, as of 2013, "reliable and generally accepted within the relevant scientific community." Upon review of the parties' supplemental briefs, as well as the outstanding issues raised by defendant on appeal, we now affirm.
Defendant argues that the evidence presented at the Frye hearing did not, as County Court concluded, demonstrate the reliability of the TrueAllele Casework system so as to render the DNA evidence admissible. The singular purpose of a Frye hearing is to ascertain the reliability of "novel scientific evidence" by determining whether the methods used to generate such evidence will, when properly performed, produce "results accepted as reliable within the scientific community generally" (People v Wesley, 83 NY2d 417, 422 [1994]; see Frye v United States, 293 F 1013, 1014 [1923]; People v Williams, 35 NY3d 24, 37 [2020]). The proponent of the novel scientific evidence bears the burden of establishing "consensus in the scientific community" as to the reliability of the methods used to produce the evidence (People v Wesley, 83 NY2d at 439 [Kaye, [*2]Ch. J., concurring]; see Sean R. v BMW of N. Am., LLC, 26 NY3d 801, 809 [2016]).
At the Frye hearing, the People offered extensive documentary evidence and testimony from Mark Perlin, the chief scientific officer of the bioinformation company — Cybergenetics — that developed and owns the proprietary TrueAllele Casework system, as well as Jay Caponera, the supervisor of forensic services at the New York State Police Investigation Center. Perlin explained that, unlike the human approach to DNA interpretation, which rules suspects in or out based upon a statistical analysis of "simplified data," the TrueAllele Casework system separates out genotypes from genetic data and uses probabilistic genotyping to calculate match statistics between genotypes, ultimately assigning a probability to the possibility of a match between evidence and a suspect. Perlin asserted that probabilistic genotyping is considered by most statisticians and forensic analysts to be the preferred method of forensic DNA interpretation and stated that the Federal Bureau of Investigation issued guidelines in 2010 permitting the use of probabilistic genotyping by validated computer programs.
With respect to the TrueAllele Casework system specifically, the testimony and documentary evidence demonstrated that, at the time in question, the reliability of the TrueAllele Casework system had been tested in roughly two dozen validation studies, two of which were conducted by Caponera, and found to be reliable in each study. Perlin and Caponera explained that validation studies test reliability by looking at certain metrics, such as sensitivity, specificity, reproducibility and accuracy. The record also established that the reliability of the TrueAllele Casework system had been the subject of several peer-reviewed articles published in forensic science journals in or before 2013. Further, in 2011, the New York State Commission on Forensic Science determined that the TrueAllele Casework system was reliable and authorized its use by the State Police. Moreover, at the time in question, courts in at least three other states had found the TrueAllele Casework system to be reliable under the Frye standard. Upon review of the foregoing, as well as other evidence contained in the extensive record, we agree with County Court that the People established that the methods employed by the TrueAllele Casework system were generally accepted as reliable within the relevant scientific community at the time the DNA evidence was analyzed (see People v Wakefield, 175 AD3d 158, 162-163 [2019], lv granted 35 NY3d 1097 [2020]; see generally People v Wesley, 83 NY2d at 426-427).[FN1]
We find defendant's remaining contentions, which relate to his sentence, to be unpersuasive. First, defendant takes issue with the manner in which County Court (Hayden, J.) corrected the illegal terms of postrelease supervision that it initially imposed on his burglary and robbery convictions. Pursuant to CPL 380.20 and 380.40, [*3]sentences must be pronounced and, subject to certain exceptions, such pronouncements must take place in the presence of the defendant (see People v Sparber, 10 NY3d 457, 470; People v Condon, 10 AD3d 811, 812 [2004], lv denied 4 NY3d 742 [2004]). Here, after recognizing that it had imposed illegal terms of postrelease supervision on defendant for his burglary and robbery convictions, County Court sent a letter to the clerk indicating that the postrelease supervision term for those convictions should have been five years (see Penal Law § 70.45 [2]), rather than 10 years, and requesting that the commitment order be modified accordingly for the court's authorization. Defendant thereafter appeared before County Court for sentencing on a separate conviction, at the start of which the court confirmed that the parties had received its letter regarding the previously imposed illegal sentence and inquired as to whether there were any objections to the corrected, shorter term of postrelease supervision for the burglary and robbery convictions. Defendant had no objection, and the court thereafter signed the amended uniform sentence and commitment form. Under these circumstances, we find that County Court's correction of the illegal sentence and imposition of legally permissible periods of postrelease supervision complied with the dictates of CPL 380.20 and 380.40.
Lastly, defendant challenges the severity of his sentence. However, upon consideration of the heinous and premeditated nature of defendant's crimes, we do not find the sentence imposed to be harsh or excessive (see People v Hartle, 159 AD3d 1149, 1155 [2018], lv denied 31 NY3d 1082 [2018]; People v Glass, 150 AD3d 1408, 1411 [2017], lv denied 30 NY3d 1115 [2018]). To the extent that we have not addressed any of defendant's remaining contentions, they have been reviewed and rejected.
Egan Jr., J.P., Lynch and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Perlin estimated that, at the time of defendant's trial, there were between 25 and 50 scientists within the forensic DNA interpretation community in the United States.