People v Bullard-Daniel (2022 NY Slip Op 01707)





People v Bullard-daniel


2022 NY Slip Op 01707


Decided on March 11, 2022


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 11, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, AND BANNISTER, JJ.


1130 KA 16-02257

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
VINCENT BULLARD-DANIEL, DEFENDANT-APPELLANT. 






ANTHONY J. LANA, BUFFALO, FOR DEFENDANT-APPELLANT. 
BRIAN D. SEAMAN, DISTRICT ATTORNEY, LOCKPORT (THOMAS H. BRANDT OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Niagara County Court (Matthew J. Murphy, III, J.), rendered September 23, 2016. The judgment convicted defendant upon a jury verdict of predatory sexual assault and burglary in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of predatory sexual assault (Penal Law § 130.95 [1] [a]) and burglary in the first degree as a sexually motivated felony
(§§ 130.91, 140.30 [2]), defendant contends that County Court erred in refusing to suppress evidence concerning the results of an analysis of the DNA contained in numerous samples of seminal fluids and other biological material located in the apartment in which the incident occurred. Defendant's contention that the admission of the DNA evidence violated his right of confrontation is not preserved for our review because defendant failed to assert it at the time of the trial (see People v Liner, 9 NY3d 856, 856-857 [2007], rearg denied 9 NY3d 941 [2007]; People v Peterkin, 89 AD3d 1455, 1456 [4th Dept 2011], lv denied 18 NY3d 885 [2012]), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Defendant further contends that the court erred in permitting the People to introduce the results of an analysis of the DNA material using the STRmix DNA analysis program (STRmix program) because such testing is not generally accepted by the relevant scientific community. We reject that contention. Briefly, the People introduced evidence that biological samples were recovered from several locations at the scene of the incident and that those samples were analyzed using the STRmix program, which indicated that defendant's DNA was contained in those samples. Before trial, the People provided defendant with notice of the results of the tests and the program used to conduct them and, at defendant's request, the court ordered a Frye hearing concerning that program (see Frye v United States, 293 F 1013, 1014 [DC Cir 1923]; see generally People v Wesley, 83 NY2d 417, 422-424 [1994]). The People introduced evidence at the hearing that the STRmix program had been the subject of numerous peer-reviewed journal articles and had been evaluated and approved by the National Institute of Standards and Technology and by the Erie County Central Police Services Forensic Laboratory before it began using the STRmix program. In addition, the People established that the STRmix program was being used by numerous forensic testing agencies and laboratories in New York, California, the United States Army, Australia, and New Zealand, and that it had been approved by the DNA Subcommittee of the New York State Forensic Science Committee. We note that the Court of Appeals has stated with respect to the admissibility of DNA analysis programs that "[t]he [DNA] Subcommittee's approval is certainly relevant and may constitute some evidence of general acceptance at a Frye hearing" (People v Williams, 35 NY3d 24, 41 [2020]). Here, after reviewing the evidence introduced at the Frye hearing, we conclude that the People established that the methods employed in the STRmix program were generally accepted as reliable within the [*2]relevant scientific community at the time the DNA evidence was analyzed (see generally Wesley, 83 NY2d at 422; People v Wilson, 192 AD3d 1379, 1380-1381 [3d Dept 2021]; People v Wakefield, 175 AD3d 158, 162-163 [3d Dept 2019], lv granted 35 NY3d 1097 [2020]), and thus the court did not err in concluding that the results of the DNA analysis were admissible. We have considered defendant's remaining contention concerning the STRmix program, and we conclude that it lacks merit.
Defendant further contends that the court erred in permitting the People to introduce certain Molineux evidence concerning prior acts of misconduct that he perpetrated against the victim. We likewise reject that contention. "Evidence of a defendant's prior bad acts may be admissible when it is relevant to a material issue in the case other than defendant's criminal propensity . . . Where there is a proper nonpropensity purpose, the decision whether to admit [such] evidence
. . . rests upon the trial court's discretionary balancing of probative value and unfair prejudice" (People v Dorm, 12 NY3d 16, 19 [2009]). Here, we conclude that the court properly balanced the probative value of the evidence and the prejudice arising therefrom, and thus the victim's testimony concerning the uncharged acts was properly admitted "to complete the narrative of the events charged in the indictment . . . and [to] provide[] necessary background information" (People v Workman, 56 AD3d 1155, 1156 [4th Dept 2008], lv denied 12 NY3d 789 [2009] [internal quotation marks omitted]; see People v Morris, 21 NY3d 588, 594 [2013]; People v Feliciano, 196 AD3d 1030, 1031 [4th Dept 2021], lv denied 37 NY3d 1059 [2021]) as well as to place "the charged conduct in context" (Dorm, 12 NY3d at 19; see People v Leeson, 12 NY3d 823, 827 [2009]). We note in particular that the court excluded many of the prior bad acts that the People sought to introduce (see e.g. People v Medley, 165 AD3d 1585, 1585 [4th Dept 2018]; People v Burkett, 101 AD3d 1468, 1471 [3d Dept 2012], lv denied 20 NY3d 1096 [2013]), that it admitted only prior bad acts that the victim had reported to the police before the charged incident, and that its limiting instructions "served to alleviate any potential prejudice resulting from the admission of the evidence" (People v Alke, 90 AD3d 943, 944 [2d Dept 2011], lv denied 19 NY3d 994 [2012]; see People v Freece, 46 AD3d 1428, 1429 [4th Dept 2007], lv denied 10 NY3d 811 [2008]).
Next, viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's contention that the verdict is contrary to the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Finally, we note that the uniform sentence and commitment form fails to indicate that defendant's conviction of burglary in the first degree was as a sexually motivated felony, and it must be amended accordingly (see generally People v Brown, 166 AD3d 1579, 1579-1580 [4th Dept 2018], lv denied 32 NY3d 1169 [2019]; People v Oberdorf, 136 AD3d 1291, 1292-1293 [4th Dept 2016], lv denied 27 NY3d 1073 [2016]).
Entered: March 11, 2022
Ann Dillon Flynn
Clerk of the Court