People v Bullock (2023 NY Slip Op 00790)

People v Bullock

2023 NY Slip Op 00790

Decided on February 10, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 10, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, CURRAN, AND OGDEN, JJ.

1041 KA 20-00597

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
KEVIN BULLOCK, DEFENDANT-APPELLANT. 

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (JOHN R. LEWIS OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (KENNETH H. TYLER, JR., OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Thomas J. Miller, J.), rendered February 28, 2020. The judgment convicted defendant, upon a jury verdict, of criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree, criminally using drug paraphernalia in the second degree, and endangering the welfare of a child. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]), criminal possession of a controlled substance in the third degree (§ 220.16 [1]), criminally using drug paraphernalia in the second degree (§ 220.50 [3]), and endangering the welfare of a child (§ 260.10 [1]). The conviction arose from an incident in which police officers, while on proactive patrol of an apartment complex located in an area known for drug and gang activity and for which the police had a trespass affidavit on file, pulled alongside a parked vehicle, at which point the front passenger—later identified as defendant—quickly exited the vehicle and advanced toward the officers. About the same time, a six-year-old girl, who was crying and distraught, exited from the back seat of the vehicle, and an adult female—later identified as the codefendant—exited from the driver's seat. One of the officers conducted a frisk search of defendant, which revealed two cell phones and approximately $9,000 in cash; however, that tangible evidence was later suppressed by County Court. The officer also approached the vehicle and, looking through the front passenger window, noticed a white powdery substance on the front passenger seat that appeared—and was later confirmed—to be cocaine. A further search of the vehicle revealed a plastic bag containing a large amount of pressed cocaine, a glass measuring cup, a large digital scale with white residue on its surface, cash and cell phones, and an additional quantity of pressed cocaine.
Defendant contends that the integrity of the second grand jury proceeding, which was brought by the People to obtain a superseding indictment following suppression of the abovementioned tangible evidence, was impaired because the People presented the suppressed evidence, and that the court thus erred in denying his motion to dismiss the superseding indictment (see CPL 210.35 [5]). We reject that contention. It is well established that, during a grand jury presentation, "not every improper comment, elicitation of inadmissible testimony, impermissible question or mere mistake renders an indictment defective. Typically, the submission of some inadmissible evidence will be deemed fatal only when the remaining evidence is insufficient to sustain the indictment" (People v Huston, 88 NY2d 400, 409 [1996]). Here, although the evidence of defendant's possession of two cell phones and $9,000 in cash on his person was inadmissible given that it had been suppressed, we conclude that the remaining evidence presented at the second grand jury proceeding was sufficient to sustain the superseding indictment (see People v Cruz-Rivera, 174 AD3d 1512, 1513 [4th Dept 2019], lv denied 34 [*2]NY3d 1127 [2020]; People v Elioff, 110 AD3d 1477, 1478 [4th Dept 2013], lv denied 22 NY3d 1040 [2013]; People v Peck, 96 AD3d 1468, 1469 [4th Dept 2012], lv denied 21 NY3d 1008 [2013]).
Defendant next contends that the prosecutor's exercise of peremptory challenges with respect to three prospective jurors of color constituted a Batson violation because the primary basis for those challenges was pretextual. Initially, inasmuch as the prosecutor offered race-neutral reasons for each challenge and the court thereafter "ruled on the ultimate issue" by determining that those reasons were not pretextual, the issue of the sufficiency of defendant's prima facie showing of discrimination at step one of the Batson test is moot (People v Smocum, 99 NY2d 418, 423 [2003]; People v Jiles, 158 AD3d 75, 78 [4th Dept 2017], lv denied 31 NY3d 1149 [2018]; cf. People v Bridgeforth, 28 NY3d 567, 575-576 [2016]). With respect to step two, "[t]he burden . . . is minimal, and the explanation must be upheld if it is based on something other than the juror's race, gender, or other protected characteristic" (People v Smouse, 160 AD3d 1353, 1355 [4th Dept 2018]; see Hernandez v New York, 500 US 352, 360 [1991]; People v Payne, 88 NY2d 172, 183 [1996]). "To satisfy its step two burden, the nonmovant need not offer a persuasive or even a plausible explanation but may offer any facially neutral reason for the challenge—even if that reason is ill-founded—so long as the reason does not violate equal protection" (Smouse, 160 AD3d at 1355 [internal quotation marks omitted]; see Purkett v Elem, 514 US 765, 767-768 [1995]; Payne, 88 NY2d at 183). "[A]t step three, the trial court must determine, based on the arguments presented by the parties, whether the proffered reason for the peremptory strike was pretextual and whether the movant has shown purposeful discrimination" (Bridgeforth, 28 NY3d at 571; see People v Hecker, 15 NY3d 625, 634-635 [2010], cert denied 563 US 947 [2011]).
Here, the People met their burden of offering a facially race-neutral explanation for the challenges. Indeed, defendant does not argue otherwise on appeal. The prosecutor explained that the prospective jurors were originally from out-of-state locations, rather than the community where the crimes occurred, and the prosecutor had found that persons with longer ties to the community were more concerned about drugs in the area (see People v Stith, 203 AD3d 1640, 1641 [4th Dept 2022], lv denied 38 NY3d 1036 [2022]; see generally Payne, 88 NY2d at 185; People v Feliciano, 228 AD2d 519, 519 [2d Dept 1996], lv denied 88 NY2d 1068 [1996]). The prosecutor also relied on additional reasons, with respect to the prospective jurors in question, supporting the exercise of the peremptory challenges—reasons that, as the People correctly point out, defendant does not address on appeal. After one prospective juror stated to the court during voir dire that he had previously used a baseball bat against someone who was trying to stab him and that a resulting criminal charge against him had been dismissed based on self-defense, but that he did not hold any grudges against law enforcement officers or the District Attorney's Office, the prosecutor subsequently provided a race-neutral explanation for peremptorily striking that prospective juror on the ground that she did not want someone with such experience on the jury (see People v Bridges, 185 AD3d 1426, 1427 [4th Dept 2020], lv denied 35 NY3d 1111 [2020]). The prosecutor's additional explanations for peremptorily challenging the other two prospective jurors were race-neutral reasons (see generally Hecker, 15 NY3d at 663-664).
We reject defendant's contention that the court erred at step three. A "trial court's determination whether a proffered race-neutral reason is pretextual is accorded 'great deference' on appeal" (Hecker, 15 NY3d at 656), and we see no reason on this record to disturb the court's determination that the prosecutor's explanations were not pretextual (see People v Escobar, 181 AD3d 1194, 1196 [4th Dept 2020], lv denied 35 NY3d 1044 [2020]). The record establishes that the prosecutor consistently exercised peremptory challenges against similarly situated prospective jurors, irrespective of color, inasmuch as the prosecutor also challenged two other panelists, who are not subjects of defendant's Batson challenge, on the ground that those panelists were originally from out-of-state locations (see People v Hodges, 99 AD3d 629, 629 [1st Dept 2012], lv denied 20 NY3d 1062 [2013]; see also Jiles, 158 AD3d at 79). Defendant also failed to meet his ultimate burden of persuasion that any of the additional reasons provided with respect to each prospective juror were pretextual (see Hecker, 15 NY3d at 663-665).
Defendant also contends that his constitutional right to confront witnesses against him was violated at trial when the prosecutor during cross-examination of defendant referenced and elicited testimony that the non-testifying codefendant had pleaded guilty to having acted in concert with defendant. As defendant correctly concedes, that contention is not preserved for our [*3]review because defendant failed to raise any objection that the prosecutor's questions and the elicited testimony violated his right of confrontation (see CPL 470.05 [2]; People v Liner, 9 NY3d 856, 856-857 [2007], rearg denied 9 NY3d 941 [2007]; People v Bullard-Daniel, 203 AD3d 1630, 1631 [4th Dept 2022], lv denied 38 NY3d 1069 [2022]). We decline to exercise our power to review defendant's contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]; Bullard-Daniel, 203 AD3d at 1631).
Relatedly, defendant contends that defense counsel's failure to object to the prosecutor's questions and the elicited testimony about the codefendant's guilty plea and to move for a mistrial on the ground that defendant's right of confrontation was violated constituted ineffective assistance of counsel. We reject that contention. "A single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial" (People v Caban, 5 NY3d 143, 152 [2005]). "To rise to that level, the omission must typically involve an issue that is so clear-cut and dispositive that no reasonable defense counsel would have failed to assert it, and it must be evident that the decision to forgo the contention could not have been grounded in a legitimate trial strategy" (People v McGee, 20 NY3d 513, 518 [2013]). Thus, "[t]o prevail on his ineffective assistance of counsel claim on the basis of this single failure to object, defendant must show both that the objection omitted by trial counsel is a winning argument, here one that would have required a mistrial . . . , and that the objection was one that no reasonable defense lawyer, in the context of the trial, could have thought to be 'not worth raising' " (People v Brown, 17 NY3d 742, 743-744 [2011]).
Here, we conclude that defendant has "failed to meet his burden of demonstrating a lack of strategic or other legitimate reasons for his defense lawyer's failure to object" (id. at 744). Defendant, against defense counsel's advice, decided to testify on his own behalf in narrative form and therein revealed that he had been charged jointly with the codefendant, who had already admitted her guilt. Defense counsel may therefore have legitimately thought as a matter of strategy that it was best to allow the jury to hear that the codefendant had accepted responsibility via a guilty plea, which was consistent with defendant's defense that the codefendant was entirely to blame for the contraband and that he should be absolved (see generally id.). If, alternatively, defense counsel considered that it would be damaging to the defense to allow the jury to hear that the codefendant had pleaded guilty to acting in concert with defendant, we conclude that "[d]efense counsel may have had a strategic reason for failing to object inasmuch as defense counsel may not have wished to call further attention to that very brief testimony" (People v Basedow, 207 AD3d 1192, 1193 [4th Dept 2022]).
Finally, defendant contends that he was denied a fair trial by prosecutorial misconduct when the People presented suppressed evidence during the second grand jury proceeding and when the prosecutor referenced and elicited testimony from defendant at trial that the codefendant had pleaded guilty to acting in concert with defendant. Defendant failed to preserve for our review his contention that he was denied a fair trial by the alleged instances of prosecutorial misconduct at trial (see CPL 470.05 [2]; People v Vanalst, 148 AD3d 1658, 1660 [4th Dept 2017], lv denied 29 NY3d 1088 [2017]), and we decline to exercise our power to review defendant's contention with respect to those alleged instances as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]). We further conclude that any improprieties at the second grand jury proceeding "were not so pervasive or egregious as to deprive defendant of a fair trial" (Vanalst, 148 AD3d at 1660 [internal quotation marks omitted]).
Entered: February 10, 2023
Ann Dillon Flynn
Clerk of the Court