Marpe v Tonoga, Inc. (2025 NY Slip Op 07053)

Marpe v Tonoga, Inc.

2025 NY Slip Op 07053

Decided on December 18, 2025

Appellate Division, Third Department

Ceresia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 18, 2025

CV-24-1311

[*1]Emily Marpe, Appellant,
vTonoga, Inc., Doing Business as Taconic, et al., Defendants, and Saint-Gobain Performance Plastics Corp., Respondent. (Action No. 1.)
Beverly Waitekus, Appellant,
vTonoga, Inc., Doing Business as Taconic, et al., Defendants, and Saint-Gobain Performance Plastics Corp., Respondent. (Action No. 2.)
Macy Lindsey, Appellant,
vTonoga, Inc., Doing Business as Taconic, et al., Defendants, and Saint-Gobain Performance Plastics Corp., Respondent. (Action No. 3.) (And Another Related Action.)

Calendar Date:November 18, 2025

Before: Reynolds Fitzgerald, J.P., Lynch, Ceresia, Fisher and McShan, JJ.

Faraci Lange, LLP, Rochester (Stephen G. Schwarz of counsel), for appellants.
Dechert LLP, New York City (David S. Weinraub of counsel) and Hinckley, Allen & Snyder LLP, Albany (Christopher Fenlon of counsel), for respondent.

Ceresia, J.
Appeals from an order of the Supreme Court (Adam Silverman, J.), entered June 18, 2024 in Rensselaer County, which, among other things, ordered an evidentiary hearing to determine the admissibility of plaintiffs' proposed expert witnesses.
These four actions concern a subject of much litigation: the allegedly improper disposal of perfluorooctanoic acid (hereinafter PFOA), a chemical used in manufacturing various consumer products including nonstick cookware and water-resistant fabric, into municipal water supplies and private wells in the Village of Hoosick Falls, Town of Hoosick and Town of Petersburgh, Rensselaer County, between 1954 and 2016. As relevant here, plaintiffs in actions Nos. 1, 2 and 3 (hereinafter collectively referred to as plaintiffs) allege that as a result of defendant Saint-Gobain Performance Plastics Corp.'s release of PFOA into the air and soil from 1996 to 2003 at its former manufacturing plant — now a designated Superfund site — plaintiffs were exposed to contaminated drinking water, causing them to contract various thyroid diseases. Following commencement of the actions, plaintiffs settled their claims against all defendants other than Saint-Gobain. Saint-Gobain moved in each action to preclude the testimony of three of plaintiffs' proposed expert witnesses, as well as for summary judgment based upon such preclusion. After holding oral argument, Supreme Court ordered a joint hearing regarding the admissibility of plaintiffs' expert testimony. Plaintiffs appeal, arguing that Supreme Court abused its discretion in requiring the hearing.[FN1] We agree and, therefore, reverse.
As a threshold matter, we acknowledge that an order granting a hearing to aid in the disposition of a motion is not appealable as of right (see CPLR 5701 [a] [2] [v]; Matter of Chain Trust, 220 AD3d 770, 771 [2d Dept 2023]; Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v Evans, 92 AD2d 669, 669 [3d Dept 1983]; but see Parker v Crown Equip. Corp., 39 AD3d 347, 348 [1st Dept 2007]; Stowell v Berstyn, 26 AD2d 828, 828 [2d Dept 1966]). However, having considered the facts and circumstances of this particular case, we deem it appropriate to treat the notices of appeal as requests for permission to appeal and grant the requests (see CPLR 5701 [c]; Mahoney v Staffa, 168 AD2d 809, 809 [3d Dept 1990]).
Turning to the merits, Saint-Gobain sought preclusion of the testimony of the three experts in question on the grounds that their proposed testimony constituted novel scientific evidence (see Frye v United States, 293 F 1013 [DC Cir 1923]) and failed to meet the foundational standards for establishing causation in toxic tort cases (see Parker v Mobil Oil Corp., 7 NY3d 434 [2006]). We will address each of these grounds in turn.
"The singular purpose of a Frye hearing is to ascertain the reliability of novel scientific evidence by determining whether the methods used to generate such evidence will, when properly performed, produce results accepted [*2]as reliable within the scientific community generally" (People v Wilson, 192 AD3d 1379, 1380 [3d Dept 2021] [internal quotation marks and citations omitted]). " 'A court need not hold a Frye hearing where it can rely upon previous rulings in other court proceedings as an aid in determining the admissibility of the proffered testimony' " (Guerra v Ditta, 185 AD3d 667, 668 [2d Dept 2020] [citation omitted], quoting People v LeGrand, 8 NY3d 449, 458 [2007]; see People v Vaughn, 43 NY3d 190, 198 [2024]). "Absent a novel or experimental scientific theory, a Frye hearing is generally unwarranted" (People v Brooks, 31 NY3d 939, 941 [2018]; accord People v Johnston, 192 AD3d 1516, 1522 [4th Dept 2021], lv denied 37 NY3d 972 [2021]).
In its motions, Saint-Gobain's arguments primarily focused not on the general scientific acceptance of plaintiffs' experts' methodologies but, rather, on the reliability of the conclusions arrived at by those experts, such that a Frye analysis does not come into play (see Lipschitz v Stein, 65 AD3d 573, 576 [2d Dept 2009]; Parker v Crown Equip. Corp., 39 AD3d at 348). To the extent that the motions can be read to implicate Frye, each of plaintiffs' three experts used methods that are neither novel nor experimental.
First, plaintiffs' general causation expert, David Savitz, utilized routine practices in the field of epidemiology to opine on the causal links between PFOA and thyroid diseases, and these tools, including "reli[ance] upon epidemiological studies, . . . are by no means a novel methodology for demonstrating a causal relationship between a chemical compound and a set of symptoms or a disease" (Jackson v Nutmeg Tech., Inc., 43 AD3d 599, 601 [3d Dept 2007]; see Nonnon v City of New York, 88 AD3d 384, 394 [1st Dept 2011]). For this reason, Savitz's general causation opinion regarding PFOA has been held admissible without the need for a Frye hearing (see NY St Cts Elec Filing [NYSCEF] Doc No. 239, Decision and Order on Frye Motion in Burdick v Tonoga, Inc., Sup Ct, Rensselaer County, index No. EF2016-253835) and, albeit under the federal Daubert standard, has been found to have gained acceptance in the scientific community (see Baker v Saint-Gobain Performance Plastics Corp., 2021 WL 2548825, 2021 US Dist LEXIS 117558 [ND NY May 7, 2021, case No. 1:16-CV-0917]).
Second, plaintiffs' specific causation expert, Manijeh Berenji, employed a differential diagnosis to link each plaintiff's PFOA exposure to her medical conditions. This is a method that is scientifically accepted (see Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d 762, 784-785 [2014]; B.T.N. v Auburn Enlarged City School Dist., 45 AD3d 1339, 1340 [4th Dept 2007]).
Third, the proposed testimony of Alan Ducatman concerning plaintiffs' future need for medical monitoring has likewise been recognized by courts as generally accepted in the field without the need for a hearing (see NY St Cts Elec Filing [NYSCEF] Doc No. 241, Decision and Order in Burdick v Tonoga, Inc[*3]., Sup Ct, Rensselaer County, index No. EF2016-253835; NY St Cts Elec Filing [NYSCEF] Doc No. 282, Exhibit D — Decision on Defendant's Daubert Motion in Sullivan v Saint-Gobain Performance Plastics Corp. [D Vt Jul. 15, 2021, Case No. 5:16-CV-125], filed in Marpe v Tonoga, Inc. Sup Ct, Rensselaer County, index No. EF2019-262072; see also Baker v Saint-Gobain Performance Plastics Corp., 2021 WL 2548825, 2021 US Dist LEXIS 117558 [ND NY May 7, 2021, case No. 1:16-CV-0917]). In light of the foregoing, a Frye hearing was unwarranted for these witnesses.
Moving on, under Parker, " '[t]he focus moves from the general reliability concerns of Frye to the specific reliability of the procedures followed to generate the evidence proffered and whether they establish a foundation for the reception of the evidence at trial.' . . . [In toxic tort cases,] [i]t is well-established that an opinion on causation should set forth a plaintiff's exposure to a toxin, that the toxin is capable of causing the particular illness (general causation) and that plaintiff was exposed to sufficient levels of the toxin to cause the illness (specific causation)" (Parker v Mobil Oil Corp., 7 NY3d at 447-448, quoting People v Wesley, 83 NY2d 417, 429 [1994]). In its motions, Saint-Gobain directed its objections to the second and third prongs of the Parker framework. That said, as plaintiffs' written submissions from Savitz and Berenji offered the requisite causal links, there was no need for a hearing to determine whether these foundational standards were met.
On the issue of general causation, Savitz opined that the scientific literature provided support for a causal relationship between cumulative PFOA exposure and thyroid disease and that, based upon his own participation in and review of the extensive body of research into PFOA along with the collective opinion of other experts, "it is more probable than not that exposure to PFOA is capable of causing thyroid disease in human[s]." This opinion sets forth more than a mere association between PFOA and thyroid disease. Indeed, in so opining, Savitz specifically acknowledged that he examined whether any association was the result of a true cause and effect relationship or a spurious correlation due to other factors. Further, while the Court of Appeals has stated that general causation may be shown even without establishing a dose-response relationship (see Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d at 784; Parker v Mobil Oil Corp., 7 NY3d at 448-449) — i.e., where disease occurrence increases with higher levels of exposure — Savitz nevertheless offered support for a dose-response relationship, asserting that "the overall body of evidence indicates an elevated risk of thyroid disorders resulting from elevated levels of PFOA" and providing examples from the literature.
Regarding specific causation, Berenji opined that plaintiffs' PFOA exposure was a significant factor in causing their thyroid diseases, based upon a differential diagnosis [*4]that considered the presence or absence of known risk factors for these diseases as well as plaintiffs' medical histories, including their documented long-term exposure to PFOA, and the fact that their PFOA blood levels were orders of magnitude above what is considered to be a background level. Even though the Court of Appeals has declined to require that a plaintiff's exposure level to a toxin be precisely quantified (see Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d at 784; Parker v Mobil Oil Corp., 7 NY3d at 448-449), Berenji was able to base her opinions upon plaintiffs' respective known exposure levels as well as the known quantities of PFOA in the water supplies.
Ultimately, while we are mindful that the determination as to whether to grant an evidentiary hearing falls within the discretion of the trial court, that discretion is not without boundaries (see e.g. Matter of Verdugo, 206 AD3d 577, 579 [1st Dept 2022]). With that in mind, given that plaintiffs' proposed expert testimony met the admissibility requirements of Frye and Parker, Supreme Court's order requiring a hearing constituted an abuse of discretion. Accordingly, Saint-Gobain's motions should have been denied in their entirety.
Reynolds Fitzgerald, J.P., Lynch, Fisher and McShan, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, and motions denied.

Footnotes

Footnote 1: Given that Supreme Court granted plaintiffs' respective motions for a stay pending appeal, the evidentiary hearing has not been held.