People v Sanchez

2026 NY Slip Op 02541

April 24, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

v

JONATHAN SANCHEZ, DEFENDANT-APPELLANT.

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department

Decided on April 24, 2026

203 KA 23-00355

Present: Lindley, J.P., Bannister, Greenwood, Nowak, And Hannah, JJ.

LAW OFFICE OF VERONICA REED, SCHENECTADY (VERONICA REED OF COUNSEL), FOR DEFENDANT-APPELLANT.

JONATHAN SANCHEZ, DEFENDANT-APPELLANT PRO SE.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (DAVID D. BASSETT OF COUNSEL), FOR RESPONDENT.

Appeal from a judgment of the Onondaga County Court (Thomas J. Miller, J.), rendered July 15, 2022. The judgment convicted defendant upon a jury verdict of murder in the second degree, attempted murder in the second degree and criminal possession of a weapon in the second degree (three counts).

[*1]

It is hereby ORDERED that the judgment so appealed from is unanimously modified as a matter of discretion in the interest of justice by reducing the sentence of imprisonment imposed for attempted murder in the second degree under count 2 of the indictment to a determinate term of 15 years and as modified the judgment is affirmed.

Memorandum: Defendant appeals from a judgment convicting him following a jury trial of murder in the second degree (Penal Law

§ 125.25 [1]), attempted murder in the second degree (§§ 110.00, 125.25 [1]), and three counts of criminal possession of a weapon in the second degree (§ 265.03 [3]). The charges arose from an incident during which numerous men drove two vehicles to a memorial service where several of the men exited the vehicles and opened fire on the crowd as part of an alleged gang war dispute. Two people were shot, and one died. Four men were indicted on the same five charges under a theory that they were acting in concert with each other.

In his main brief, defendant contends that County Court abused its discretion in issuing a protective order under CPL 245.70 regarding one witness. We reject that contention. " '[T]he legislature, when enacting CPL 245.70, created an exception for disclosure relating to confidential informants' that 'permits the People to withhold and redact from discovery materials the name and contact information of a confidential informant' " (People v Taylor, 237 AD3d 1543, 1544 [4th Dept 2025]). It is well settled that the issuance of a protective order under CPL 245.70 "involves balancing the defendant's interest in obtaining information for defense purposes against concerns for witness safety and protection" (People v Beaton, 179 AD3d 871, 874 [2d Dept 2020]; see People v Jeanty, 187 AD3d 828, 828-829 [2d Dept 2020]). Contrary to the contention of defendant, the People established that there was a " 'danger to . . . the safety of [the] witness' or 'risk of intimidation' " (Taylor, 237 AD3d at 1544, quoting CPL 245.70 [4]). The witness, who was in a vehicle with defendant and his codefendants before the shooting and told the police that he had observed defendant take part in the shooting, faced significant risk of harm or intimidation should his identity be revealed to defendant and his codefendants.

To balance defendant's interest in obtaining information for defense purposes against concerns for the witness's safety and risk of intimidation, the court appropriately permitted disclosure of the witness's identity to defense counsel but not to defendant until one month before trial (see People v Morales-Aguilar, 186 AD3d 786, 787-788 [2d Dept 2020]; People v [*2]Artis, 179 AD3d 1440, 1442-1443 [3d Dept 2020]). Thus, although the witness's identity was not disclosed to defendant at the suppression hearing, his identity was " 'turned over early enough' to permit defendant to prepare for effective cross-examination of the witness[ ] at trial" (People v Eaves, 152 AD3d 1226, 1227 [4th Dept 2017], lv denied 30 NY3d 949 [2017]), and we conclude, based on the relevant statutory factors, i.e., "witness safety, risk of witness intimidation, and risk of an adverse effect upon the legitimate needs of law enforcement" (People v Griggs, 180 AD3d 853, 855 [2d Dept 2020]; see CPL 245.70 [4]), that the court appropriately balanced defendant's interests and the witness's safety and protection.

Defendant further contends in his main brief that the court erred in refusing to suppress identification evidence. We likewise reject that contention. As noted above, the protective order was appropriately issued and, as a result, we conclude that defense counsel had the necessary information at the suppression hearing regarding that witness's identification of defendant in a photo array. Defendant concedes that the photo array shown to the witness was not unduly suggestive, but he contends that some other ground for suggestiveness may have been uncovered at the hearing had he been able to cross-examine the witness or to cross-examine the officer who conducted the photo array about the witness. We note, however, that the Court of Appeals has recognized that "a defendant's opportunity to participate in suppression proceedings must yield in some cases to the need for confidentiality" (People v Castillo, 80 NY2d 578, 587 [1992]). Here, inasmuch as defendant has not specified any particular information that could have been obtained regarding the circumstances of the witness's identification of defendant (cf. People v Ocasio, 134 AD2d 293, 294 [2d Dept 1987]), we conclude that the court did not abuse its discretion in that regard.

Three officers testified at the suppression hearing regarding their confirmatory identifications of defendant. Even assuming, arguendo, that defendant's challenge to their identifications is preserved, we conclude that reversal is not warranted. One of the officers did not testify at trial (see People v Crowley, 188 AD3d 1665, 1666-1667 [4th Dept 2020], lv denied 36 NY3d 1056 [2021]). Another officer, familiar with defendant from defendant's neighborhood, did not independently identify defendant at trial (see id.). Although the third officer did identify defendant at trial and may not have had sufficient contacts with defendant to make a confirmatory identification (see generally People v Mosley, 41 NY3d 640, 648-649 [2024]), we conclude that any error in that regard is harmless (see generally People v Crimmins, 36 NY2d 230, 240-241 [1975]). Surveillance video evidence showed the two vehicles driving to the scene just before the shooting and leaving the scene just after the shooting. Eyewitnesses established that the shooters were some of the occupants of those vehicles. Defendant's fingerprint was found on one of the vehicles. Another passenger of that vehicle, who remained in the vehicle during the shooting, testified that defendant was in possession of a gun. Finally, inasmuch as surveillance videos showed the occupants of the vehicles, the jury was able to compare the videos to defendant's appearance in the courtroom.

In his pro se supplemental brief, defendant contends that the court erred in rejecting his Batson challenge. That contention lacks merit. Batson set forth a three-step test for trial courts to apply in determining whether peremptory challenges have been used by a party to exclude prospective jurors on the basis of race (see Batson v Kentucky, 476 US 79, 94-98 [1986]). First, the party raising a Batson challenge must make a prima facie showing that the opposing party exercised a peremptory strike to remove a juror on the basis of race (see id. at 96). Second, the nonmoving party must come forward with race-neutral reasons for striking the juror (see id. at 97). Finally, the moving party must establish that the reasons proffered were " 'a pretext for intentional discrimination' " (People v Wright, 42 NY3d 708, 715 [2024], quoting People v Smocum, 99 NY2d 418, 422 [2003]; see People v Bullock, 213 AD3d 1351, 1352-1353 [4th Dept 2023], lv denied 40 NY3d 933 [2023]).

When defense counsel questioned the prosecutor's use of a peremptory challenge to strike the sole Latino prospective juror, the prosecutor provided several reasons for striking the prospective juror, e.g., he had no hobbies, he "[did] not like to do anything," and he had "no stake in the community." Where the prosecutor provides a race-neutral reason for striking the juror, " 'the inference of discrimination is overcome' " (People v Hecker, 15 NY3d 625, 656 [2010], cert denied 563 US 947 [2011]; see People v Allen, 86 NY2d 101, 109 [1995]), and "the sufficiency of the prima facie case showing becomes moot" (Hecker, 15 NY3d at 660; see People v Tucker, 181 AD3d 103, 111 [4th Dept 2020], cert denied — US —, 141 S Ct 566 [2020]). [*3]Here, we conclude that the prosecutor offered facially neutral reasons supporting the challenge and, as a result, the inference of discrimination is overcome. The question then becomes whether the allegedly race-neutral reasons proffered by the People were pretextual (see Wright, 42 NY3d at 715). We conclude that the court did not abuse its discretion in determining that the prosecutor's explanation of the peremptory challenge was not pretextual (see People v Herrod, 174 AD3d 1322, 1323 [4th Dept 2019], lv denied 34 NY3d 951 [2019]; People v Jiles, 158 AD3d 75, 78 [4th Dept 2017], lv denied 31 NY3d 1149 [2018]).

Defendant failed to preserve for our review his contention, raised in his pro se supplemental brief, that he was denied a fair trial by prosecutorial misconduct on summation, inasmuch as he made no objection to the allegedly improper comments of the prosecutor (see People v Romero, 7 NY3d 911, 912 [2006]; People v Williams, 233 AD3d 1463, 1465 [4th Dept 2024], lv denied 43 NY3d 1012 [2025]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).

Contrary to the contention of defendant in his main brief, we conclude that the evidence, viewed in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), is legally sufficient to support the conviction with respect to each count (see People v Bleakley, 69 NY2d 490, 495 [1987]) and, viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally id.).

Contrary to defendant's contention in his main brief, the sentences imposed on the counts of murder in the second degree and attempted murder in the second degree could legally be imposed consecutively as the conduct underlying those offenses constituted separate and distinct acts (see Penal Law § 70.25 [2]; People v Laureano, 87 NY2d 640, 643 [1996]; see also People v McKnight, 16 NY3d 43, 48 [2010]; People v Brown, 204 AD3d 1390, 1394 [4th Dept 2022], lv denied 39 NY3d 985 [2022]). We agree with defendant, however, that his aggregate sentence is unduly harsh and severe. Defendant's aggregate sentence amounted to 50 years to life. The sentence imposed on defendant, who was 19 years old at the time of the offense, is decades longer than those imposed on his codefendants, even though all defendants were charged with acting in concert with each other to commit the same offenses. Although there is some evidence that defendant may have fired the shot that killed the murder victim, "that was due only to happenstance" and does not render any one of the multiple shooters "more or less culpable than the other" (People v Reed, 237 AD3d 1490, 1492 [4th Dept 2025], lv denied 43 NY3d 1058 [2025]).

We therefore modify the judgment as a matter of discretion in the interest of justice (see CPL 470.15 [6] [b]; People v Delgado, 80 NY2d 780, 783 [1992]) by reducing the sentence of imprisonment imposed for attempted murder in the second degree under count 2 of the indictment

to a determinate term of incarceration of 15 years, which results in an aggregate term of imprisonment of 40 years to life.

Entered: April 24, 2026

Ann Dillon Flynn

Clerk of the Court